KENTUCKY FARM BUREAU MUTUAL
INSURANCE COMPANY, Movant,

v.

L. G. COOK, Executor and Trustee of
Estate of W. F. Foster, et al.,
Respondents.

Supreme Court of Kentucky.

April 10, 1979.

Francis T. Goheen, Paducah, Jack Q.
Heath, Louisville, for movant.

John C. Lovett, Benton, Earl T. Osborne,
Craig Housman, Williams, Housman &
Sparks, Earle T. Shoup, Paducah, for re-
spondents.

REED, Justice.

I

We granted Kentucky Farm Bureau Mu-
tual Insurance Company's motion for dis-
cretionary review but limited the grant to
the holding of the Court of Appeals that the
award of excess peremptory jury challenges
to one side of the case though error was
harmless and did not warrant a new trial.

In our view the two opinions rendered by
the Court of Appeals in these complicated
multi-party actions correctly dispose of all
the issues except the one on which we have
granted review. The opinions contain very
helpful discussions of substantive law in an
area infrequently considered. We direct
these opinions be published except for Part
III of the opinion which discussed and de-
cided the excess peremptory jury challenges
issue.

For a detailed recitation of the facts rele-
vant to the issue on review see *Kentucky*

*Farm Bureau Mutual Insurance Co. v. Cook,* Ky.App., 590 S.W.2d 885 (1978).[1]

## II

In the declaratory judgment action the evidence presented this critical question: "Was the Vaughn truck available for the regular use of the Foster Estate?" If the answer was "yes" Kentucky Farm Bureau as insurer did not provide coverage on that truck, but if the answer was "no" Kentucky Farm Bureau did extend coverage under the "other automobiles" clause of its policy.

In the selection of the jury to try this question, the trial court granted nine peremptory challenges to the defendants. Kentucky Farm Bureau, the plaintiff, was granted only three peremptory challenges. Kentucky Farm Bureau vigorously objected to the allocation of peremptory challenges and to the trial court's action in allowing the defendants to confer prior to exercising their challenges.

The Court of Appeals found that all of the defendants took identical trial positions. KRS 29.290, in effect at the time of this trial, allowed additional peremptory challenges to multiple defendants or multiple plaintiffs only if their interests were antagonistic.[2] The Court of Appeals properly held "that it was error for the trial court to grant the defendants six additional peremptory challenges." It also held, however, that the error was harmless within the meaning of CR 61.01[3] and hence did not require reversal. The Court of Appeals concluded that the erroneous award of excess peremptory challenges to the defendants did not affect any substantial right of the plaintiff.

## III

In *Sodousky v. McGee,* 27 Ky. (4 J.J. Marsh.) 267 (1830) a predecessor statute of KRS 29.290 [first section of an act of 1806 (II Dig. 694)] declared "each party litigant shall have the right of peremptory challenge to one-fourth of the jury summoned." The court in construing this statute stated:

"The parties litigant, mean the antagonist [sic] sides of the controversy. If there be a plurality of plaintiffs, they are all only one party litigant. So a plurality of defendants constitute one, and but one party to the suit. The party plaintiff, can challenge peremptorily, no more than three jurors. Why should the party defending, be allowed a greater latitude? Should not the right be reciprocal?" *Id.* at 270.

This interpretation has been consistently applied to successor statutes. E. g., *Cumberland Telephone & Telegraph Co. v. Ware's Administratrix,* 115 Ky. 581, 74 S.W. 289 (1903). The same interpretation was adopted in *Pendly v. Illinois Central R.R. Co.,* 28 Ky.L.Rptr. 1324, 92 S.W. 1 (1906) where the chief ground for reversal was that the trial court erroneously allowed the two defendants a total of six peremptory challenges when they should have been allowed only three.

In *Williams v. Whitaker,* Ky., 293 S.W.2d 627 (1956), a defendant cross-claimed against his co-defendant and moved that he be granted three peremptory challenges. The trial judge denied the motion. We reversed because the defendants had antagonistic positions on the issue to be tried. We directed that the additional peremptory challenges be granted. *Roberts v. Taylor,*

---

1. For discussion in depth of tort liability of fiduciaries, another issue presented by these cases, see *Cook v. Holland,* Ky.App., 590 S.W.2d 885 (1978).

2. The governing provisions now applicable to peremptory challenges in civil cases are contained in Administrative Procedures of the Court of Justice, Section 31, which provides in pertinent part that each opposing side shall have three peremptory challenges, but co-par-

ties having antagonistic interests shall each have three peremptory challenges.

3. CR 61.01 provides in part: "The court at every stage of the proceedings must disregard any error or defect in the proceeding *which does not affect the substantial rights of the parties.*" (emphasis supplied).

Ky., 339 S.W.2d 653 (1960) held that although filed cross claims might establish antagonistic positions between the parties litigant, the filing of cross claims was not required to establish the right to additional peremptory challenges if the co-defendants occupied antagonistic positions in fact. See also *District Union Local 227, Amal. Meat Cutters v. Fleischaker*, Ky., 384 S.W.2d 68 (1964) and *R. E. Gaddie, Inc. v. Evans*, Ky., 394 S.W.2d 118 (1965).

■ It is apparent that the allocation of peremptory challenges in civil cases has occupied a settled role as part of the trial process in this jurisdiction from 1830 to the present day. It is a defined mechanism and does not depend on the exercise of judicial discretion. "The purpose of the peremptory challenges is to afford parties a fair trial on the issue to be tried." *Penker Construction Co. v. Finley*, Ky., 485 S.W.2d 244, 249–50 (1972).

### IV

■ The thrust of the disposition by the Court of Appeals to treat the error as harmless must be based on the proposition that the plaintiff did not demonstrate actual prejudice. Whether an erroneous allocation of peremptory challenges must be accompanied by a showing of actual prejudice in order to secure a reversal and new trial is a question on which there is a split of authority in the various state jurisdictions. See Annot. 95 A.L.R.2d 957 (1970), entitled "Effect of Allowing Excessive Number of Peremptory Challenges." We will not stultify the problem further with extended discussion and attempted analysis of the various cases cited in the annotation. Suffice it to say, whether it represents the numerical plurality of foreign decisions or not, we are persuaded that when the error is properly preserved, reversal and a new trial should be awarded as a matter of law.

The requirement of a showing of actual prejudice effectively nullifies the requirements of the rule on allocation of peremptory challenges. To show actual prejudice, the complaining litigant would be required to discover the unknowable and to reconstruct what might have been and never was, a jury properly constituted after running the gauntlet of challenge performed in accordance with the prescribed rule of the game.[4] Add to this the further obstacle that it is the policy of the law to look with disfavor on attempts to invade the jury's internal process of decision to impeach verdicts except in relatively rare instances.

It may be that peremptory challenges should be abolished in civil cases and only challenges for cause allowed. We are informed this is the present English practice. As long as they are retained as part of the trial process, however, we believe that their proper allocation between litigants is a substantial right which so pervades the process that its erroneous application requires reversal as a matter of law if the issue is properly preserved by the adversely affected litigant.

■ That part of the decision of the Court of Appeals concerning the allowance of excess peremptory challenges as discussed in Part III of its opinion is reversed. That part of the judgment of the Graves Circuit Court as modified by the Court of Appeals, which adjudges that the Kentucky Farm Bureau policies on the Foster Estate's two trucks provide liability to L. G. Cook, Individually and as Executor of the Foster Estate, for the damages sustained by Bowen, Dabney and Holland when the automobile in which they were riding collided with a truck owned by Vaughn and driven by Baucom is likewise reversed for new trial on the issue of whether the Vaughn truck was "available for regular use" of the W. F. Foster Estate.

All concur except CLAYTON, J., who did not participate in the consideration of this case.

---

4. See Traynor, "The Riddle of Harmless Error," 66 (Ohio State Press, 1970).