Terrance ALHOLM,
Petitioner, Appellant,

v.

Richard WILT, d.b.a. Lakeside Bar,
Petitioner, Respondent.

No. CX–85–1238.

Supreme Court of Minnesota.

Oct. 10, 1986.

Harold R. Fritz, II, Nisswa, for appellant.

John W. Person, Brainerd, for respondent.

KELLEY, Justice.

Appellant Alholm sued respondent Wilt, d.b.a. Lakeside Bar, claiming that respondent was liable for personal injury damages sustained by Alholm as the result of an alleged assault upon him by an intoxicated patron of the bar. On appeal from a jury verdict in favor of the bar owner, appellant Alholm contends the trial court erred in its jury instructions and erroneously impaneled the trial jury. A panel of the court of appeals affirmed the trial court's

jury instructions, but remanded the case for retrial based upon the error of law which occurred in the selection of the jury and the seating of an alternate juror.[1] We concur in the remand.

On August 15, 1980, appellant Alholm and his wife were patrons in the Lakeside Bar owned by Wilt. At the same time, Bill Miles was likewise a patron at the Lakeside. Appellant claims that as he was leaving the bar, Miles assaulted him without provocation. Miles had been drinking heavily throughout the day. He had been boisterous and loud in the bar. On prior occasions while at the bar, Miles engaged in arguments with other bar patrons resulting in "slapping matches" which, on at least two instances, spilled into an alley adjacent to the premises. On another earlier occasion, Miles engaged in a fight with Jim Compton, the bar's bouncer. Shortly before the alleged assault, the bartender on duty requested assistance from Compton when Miles and a companion had become obnoxious because she refused to serve him more liquor after "last call."

Appellant claims Miles assaulted him with a broken glass resulting in large and deep cuts in his right cheek and left upper arm, which required 71 stitches to close.

1. Alholm's claim against respondent Lakeside Bar was premised on innkeeper negligence liability.[2] At the conclusion of the evidence in the second trial, the trial court instructed the jury on innkeeper liability using the four elements identified by the panel of the court of appeals in Alholm I, 348 N.W.2d 106, 109 (Minn.App.1984).[3]

---

1. Alholm v. Wilt, 380 N.W.2d 851 (Minn.App. 1986) (hereinafter Alholm II).

2. Following a prior trial of Alholm's claim against the bar, a panel of the court of appeals reversed the trial court's order directing a verdict in favor of Lakeside on the issue of its negligence. Alholm v. Wilt, 348 N.W.2d 106 (Minn.App.1984) (hereinafter Alholm I).

3. The court's charge on innkeeper liability read:
    The defendant is required to use reasonable care in the operation of his business. The

defendant-proprietor may be involved in what is called negligence. The elements necessary to prove an innkeeper's liability under negligence are as follows:
    1st. The proprietor must be put on notice of the offending party's viscous [sic] or dangerous propensities by some act or threat.
    2nd. The proprietor must have an adequate opportunity to protect the injured patron.
    3rd. The proprietor must fail to take reasonable steps to protect the injured patron.
    4th. The injury must be forseeable [sic].

The jury returned a verdict absolving respondent from causal negligence.

Contending that the court's instruction regarding foreseeability of injury was insufficiently specific, appellant requested the trial court to instruct the jury that:

> The law recognizes drunken persons as a reasonably anticipated source of danger to others and therefore requires tavern keepers to exercise the highest degree of care to protect its patrons from harm at the hand of said drunken patrons.

In the alternative, he requested the court instruct:

> Authorities recognize that drunken behavior is unpredictable, also that slight irritations, real or imaginary, may cause outbursts of anger and may lead to aggressive acts. The presence of an intoxicated person upon the premises immediately exposes the proprietor to the hazards of such person and when it appears that such intoxicated person might cause a disturbance or harm other patrons, the proprietor is obligated to do something more than request such a person to leave. There must be some affirmative action to maintain order on the premises by demanding that such person leave or by calling the authorities to enforce such demand.[4]

Alholm contends that because the proffered charge is specific and is supported by the facts of the case, the trial court should be compelled to utilize the instruction. In so doing, he relies on *Hagen v. Snow*, 244 Minn. 101, 69 N.W.2d 100 (1955) and *Nubbe v. Hardy Continental Hotel System of Minnesota*, 225 Minn. 496, 31 N.W.2d 332 (1948).

Trial courts are allowed "considerable latitude" in selection of language in the jury charge. *Cameron v. Evans*, 241 Minn. 200, 208, 62 N.W.2d 793, 798 (1954), *Barnes v. Northwest Airlines, Inc.*, 233 Minn. 410, 421, 47 N.W.2d 180, 187 (1951). They likewise possess broad latitude in de-

termining the propriety of a specific instruction. *Sandhofer v. Abbott Northwestern Hospital*, 283 N.W.2d 362, 367 (Minn.1979). As we stated in *Barnes*:

> All that is required in the way of instructions is that the charge as a whole convey to the jury a clear and correct understanding of the law of the case. The charge should not assume the existence of facts in controversy, or lay too much emphasis on particular facts or the testimony of particular witnesses.

233 Minn. at 421, 47 N.W.2d at 187. Appellant failed to demonstrate that the trial court abused its discretion in instructing as it did rather than using the proffered instructions. Even had the proffered instructions constituted a correct statement of the law, which they did not, provided the court's instruction appropriately stated the law, reversal will not follow "simply because the litigant preferred to use other language." *Moosbruger v. McGraw-Edison Co.*, 284 Minn. 143, 158, 170 N.W.2d 72, 81 (1969).

Appellant's first proffered instruction used the words "highest degree" of care. Tavern owners in Minnesota have the duty to exercise reasonable care under the circumstances to protect their patrons from injury. There exists no duty to use "the highest degree of care." *Filas v. Doner*, 300 Minn. 137, 218 N.W.2d 467, 469 (1974), *Priewe v. Bartz*, 249 Minn. 488, 491, 83 N.W.2d 116, 119 (1957). Even in *Sylvester v. Northwestern Hospital of Minneapolis*, 236 Minn. 384, 386–88, 53 N.W.2d 17 (1952) (which was not an innkeeper liability case) relied upon by appellant, we restated that the appropriate standard was that of the use of reasonable care under the circumstances. 236 Minn. at 386, 387, 53 N.W.2d at 19, 20. Thus the trial court was clearly correct in its refusal to give appellant's first proffered instruction.

Moreover, the trial court correctly refused to give appellant's alternate prof-

---

**4.** The second of the proffered instructions is a direct quote from *Priewe v. Bartz*, 249 Minn. 488, 492, 83 N.W.2d 116, 120 (1957) quoting from *Sylvester v. Northwestern Hospital of Min-* *neapolis*, 236 Minn. 384, 389, 53 N.W.2d 17, 20 (1952), which is utilized in *Alholm I*, 348 N.W.2d at 109.

fered instruction. We have noted that it is neither appropriate nor good policy for trial courts to use texts of reported decisions of appellant courts because, when used out of context, such texts are sometimes misleading. *See, e.g., Hovey v. Wagoner*, 287 Minn. 546, 548–49, 177 N.W.2d 796, 798 (1970). We also have noted:

A court, through its instruction, is not authorized to give prominence to and emphasize particular facts disclosed by the evidence, thus singling out elements or views upon the controversy which were proper for argument and discussion by counsel, but which might very justly be declined to be thus noticed by the court.

*Barnes*, 233 Minn. at 420, 47 N.W.2d at 187. *See also Cameron v. Evans*, 241 Minn. 200, 208, 62 N.W.2d 793, 799 (1954).

Had the trial court given either of appellant's requested instructions, undue prominence would have been given to particular facts which might have misled the jury as to their importance. Emphasizing evidence is properly the function of counsel in closing argument, not by the court in its instructions. *See, e.g., Van Tassel v. Hillerns*, 311 Minn. 252, 257, 248 N.W.2d 313, 316 (1976).

The trial court properly rejected the proffered instructions, and gave a generally appropriate jury instruction on innkeeper liability.[5]

2. Consistent with a method of jury selection employed by at least some, if not all, of the judges in civil cases tried in the Ninth Judicial District, the trial court selected a jury consisting of six jurors and one alternate to hear this case. To do so, eleven names were drawn at random from a larger panel. Each attorney exercised two peremptory challenges. The seven remaining persons heard the case. Neither the jury, the court nor counsel knew which person was to be the alternate juror, but appellant's counsel, not being familiar with the Ninth Judicial District procedure, assumed that the seventh juror seated would be the alternate. Immediately before submission, the court instructed the clerk to draw one name from the jury wheel. That person was designated the alternate and excused by the court. That person was not the seventh juror.

Juror Sens had been the seventh "juror" seated. She thus became one of the jury panel that ruled in favor of respondent.[6] She had formerly been a bar owner. During voir dire interrogation, she indicated that she was opposed to laws that made bar owners responsible for the acts of drunken people and that she thought such laws were unfair to bar owners. She acknowledged, however, that she knew the present case was not a "dram shop" case and recognized that bar owners did have a duty to control unruly patrons. Appellant's counsel neither challenged her for cause nor did he exercise one of his peremptory challenges to remove her. He assumed that since she was the seventh juror, she would be the alternate, and since the chance of her sitting was slim, he was willing to take that risk.

Immediately upon realization that she was not to be the alternate and was to sit on the jury panel, appellant's counsel made an objection which was overruled by the trial court. On appeal, appellant contends, and the panel of the court of appeals

---

**5.** Although not raised on this appeal, we are troubled by the practice of placing foreseeability within the jury's domain. The foreseeability issue, as a threshold issue, is more properly decided by the court prior to submitting the case to the jury. If the trial court concludes that the innkeeper did not have notice of the person's dangerous propensities, then it must find that the injury would not have been foreseeable to a reasonable innkeeper and thus, no duty to protect arose.

Because foreseeability has nothing to do with proximate cause, we do not believe that the jury should be instructed on the issue. *See, e.g.,* Prosser & Keaton on Torts § 43 at 280–81 (5th Ed.1984). To the extent our prior case law speaks of "foreseeability" as an element of the cause of action, we were only discussing foreseeability in the context of whether a legal duty arises, not as something on which the jury should be instructed.

**6.** Voir dire was not conducted on the record. The facts stated are based upon accounts contained in the briefs of the parties. These accounts are in substantial agreement.

agreed, that the method of jury selection was erroneous and prejudicial entitling him to a third trial.

■ It is manifestly clear that the system of selection of the alternate juror failed to comport with Minn.R. Civil P. 47.-02 which specifies the method of selection of alternate jurors to be used by the district courts.[7] Analysis of the rule demonstrates that alternate jurors shall replace jurors who, because of disability or other reason, became disqualified to serve. To properly accomplish this, it seems obvious the jury should be first selected,[8] and, thereafter, the alternate(s) selected. The rule further contemplates that designation of the alternate should take place *before* trial commencement. As did the court of appeals, we conclude that Rule 47.02 was violated by the trial court by employing the procedure used in this case.

Respondent Wilt correctly observes that whether any alternate jurors are called or not rests within the discretion of the trial court. Therefore, he argues, the trial court should have discretion to use any selection method it chooses so long as "the minimal requirements of the rule are adhered to." In respondent's view, those "minimal requirements" contemplate that alternate jurors must have the same qualifications as jurors, be subject to voir dire and challenges, and take the same oath. Respondent asserts that the method used in this case meets those "minimal requirements" and is no less arbitrary than a method employed by some trial courts utilizing the last person seated in the jury box as the alternate.

We perceive this argument to be flawed. Clearly, Rule 47.02 allows an extra peremptory challenge to be used only in relation to the alternate juror. Under the random selection practice here utilized, it is possible that an exercise of that extra challenge would leave only five remaining jurors giving rise to a mistrial because, absent consent, a civil jury of less than six may not return a verdict. Minn.Stat. § 593.01 (1984); Minn.R. Civil P. 48.

More importantly, respondent ignores the fact that the policy consideration behind the rule authorizing utilization of an alternate juror is to prevent mistrials due to subsequent juror disability resulting in a jury composed of an inadequate number. Adoption of the interpretation of the rule urged upon us by respondent would do nothing to reduce the risk of mistrials if too few jurors remain to impanel a six-person jury. To the contrary, the method of considering the last juror seated as the alternate fulfills that policy goal of the rule because even if an appellant exercised the extra peremptory on the alternate, a jury of six could still be impaneled.

As the court of appeals recognized, there is merit in selecting the jury by a method whereby the alternate does not know during the trial that, in fact, he or she is the alternate. A person with knowledge at the inception of the trial that he or she is an alternate may have somewhat less motivation to pay close attention to the trial proceeding than if the person was unaware whether part of the responsibility to render a verdict would rest with him or her. *Alholm II,* 380 N.W.2d at 855 n. 1. However, other methods of alternate selection may

7. **Rule 47.02: Alternate Jurors**

The court may direct that one or two jurors in addition to the regular panel be called and impaneled to sit as alternate jurors. Alternate jurors, in the order in which they are called, shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities, and privileges as the principal jurors. An alternate juror who does not replace a principal juror shall be discharged after the jury retires to consider its verdict. If one or two alternate jurors are called, each party is entitled to one peremptory challenge in addition to those otherwise allowed by law. The additional peremptory challenge may be used only against an alternate juror, and the other peremptory challenges allowed by law shall not be used against the alternates.

8. The civil jury in Minnesota consists of six persons. Minn.Stat. § 593.01 (1984).

be employed that address the concern for attentiveness but yet give to the parties the right to know at the conclusion of the voir dire, but before the presentation of evidence, who the alternate is to be. The court of appeals in footnote 1 of its opinion set out two methods compatible with both insuring attentiveness and the underlying policies of Rule 47.02. Undoubtedly, there are others. Indeed, the parties, through counsel, with concurrence of the court can agree on the record to any method of alternate jury selection. Absent such agreement, the procedure specifically set forth in Rule 47.02 must be employed, or, at least a procedure must be used that provides to the parties the additional peremptory challenge and which insures that counsel know the composition of the jury before reception of evidence. Since the procedure used here provided neither, we concur in the conclusion that the trial court erred in the jury selection process.

■ Does it follow that such error was prejudicial? Normally, there is no ground for reversal unless prejudice exists. *See, e.g., Midway Center Associates v. Midway Center, Inc.,* 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975). Alholm fails to demonstrate any prejudice whatsoever in his briefs or in oral argument. Were we to apply the general rule, we would sustain the verdict. We note that several of our sister jurisdictions do apply the harmless error analysis in cases involving deprivation of rights of litigants in the jury selection process. *See, e.g., Grimes v. Haslett,* 641 P.2d 813, 817 (Alaska 1982), *Falcon Zinc Co. v. Flippin,* 171 Ark. 1151, 287 S.W. 394 (1926), *Arkansas Kraft Corp. v. Coble,* 15 Ark.App. 25, 26, 688 S.W.2d 319, 320–21, (Ark.App.1985). However, other courts have rejected the harmless error analysis when there has been trial court deviation from jury selection rules when such deviation deprives litigants of substantial rights. These courts have commented that demonstration of prejudice in this instance is ordinarily and practically impossible. *See, e.g., Robertson v. Commonwealth,* 597 S.W.2d 864, 865–66, (Ky. 1980). Although *Robertson* was a criminal case involving rules of criminal procedure and a criminal procedure statute, that same court one year earlier had rejected the harmless error rule in a civil case where jury selection rules had been violated. *Kentucky Farm Bureau Mutual Ins. Co. v. Cook,* 590 S.W.2d 875, 877 (Ky.1979).[9]

With respect to what he designates as "errors prejudicial to the jury process" (e.g. errors in jury selection or the denial of peremptory challenges) former California Chief Justice Roger Traynor, in his book entitled *The Riddle of Harmless Error* (1970), wrote that often such error:

[C]an be declared prejudicial for the simple reason that the court is unable to declare a belief one way or the other as to the probable effect of the error on a particular judgment. There is also the preeminent reason that such errors are so subversive of the judicial process as to make reversal necessary.

*Id.* at 64. He asserts that although not demonstrably prejudicial to a particular litigant, errors of this nature justify reversal given their prejudice to the judicial system itself. He further contends that the requirement of showing prejudice when the trial court has denied the appellant his or her peremptory challenge is an uncrossable threshold for an appellant. In discussing the case of *Buckley v. Chadwick,* 45 Cal.2d 183, 288 P.2d 12, (1955), Justice Traynor wrote that the California Supreme Court:

---

**9.** In explaining its refusal to follow the harmless error rule, the court said:

The requirement of a showing of actual prejudice effectively nullifies the requirements of the rule on allocation of peremptory challenges. To show actual prejudice, the complaining litigant would be required to discover the unknowable and to reconstruct what might have been and never was, a jury properly constituted after running the gauntlet of challenge performed in accordance with the prescribed rule of the game. Add to this the further obstacle that it is the policy of the law to look with disfavor on attempts to invade the jury's internal process of decision to impeach verdicts except in relatively rare instances.

590 S.W.2d at 877 (footnote omitted).

[H]eld that although the trial court had denied the plaintiff his right to a peremptory challenge, the error was harmless because there was no affirmative showing of prejudice. An appellant, however, could not possibly make such a showing, for he is precluded from impeaching a jury verdict. In any event, he should not be called upon to do the impossible at the appellate stage, given the meaning of peremptory. By definition, the right to a peremptory challenge can no more be encumbered with conditions at the appellate stage than at the trial.

Traynor, *supra*, at 66.

The approach of the Kentucky Supreme Court, as well as the arguments advanced by Justice Traynor with respect to rejection of the harmless error rule in cases where there has been deviation from promulgated procedural rules governing jury selection appear to us to be most persuasive. Therefore, we conclude that notwithstanding appellant's failure to demonstrate prejudice, the trial court's deviation from Rule 47.02 resulting in deprivation of appellant's right to an extra peremptory challenge on the alternate juror and his right to know the composition of the jury prior to evidence presentation subverted the judicial process itself.[10]

■ Finally, respondent contends that appellant Alholm waived his right to have the alternate juror selected according to Rule 47.02 procedure by not preserving the record for review when he failed to object at the time (1) the court selected 11 prospective jurors in the box, (2) when he failed to request an additional peremptory strike to be used in selecting the alternate, and (3) when he neither exercised a challenge for cause nor a peremptory challenge on Mrs. Sens. In short, respondent contends that appellant failed to force the trial court to make rulings during the jury selection process. *See, e.g., Grimes v. Haslett,* 641 P.2d 813, 816–17 (Alaska 1982).

In those respects, we agree that appellant did fail in his obligation to appropriately perfect the record. However, even if we were to hold that this failure constituted a waiver of the court's deviation in the process of selecting the alternate juror, it seems clear that such waiver was not the cause of the prejudice to the jury system itself. At all times prior to the conclusion of the court's instructions to the jury, appellant's counsel was under the reasonable impression that Mrs. Sens was the alternate, and that the jury which would determine the outcome of the case consisted of the first six persons seated in the box. Immediately upon learning that such was not the case, he promptly called his objection to the attention of the trial judge. Even at that late time in the trial, the judge could have remedied the error by excusing Mrs. Sens and seating the juror whose name had been drawn at random by the clerk and who was then still present in the courtroom. Had the court followed that procedure, Alholm would have had the six-person jury he thought he had at the commencement of the trial and the failure to have awarded Alholm an extra peremptory in connection with the alternate juror selection would have been clearly harmless error. Finally, the policy underlying Rule 47.02 would have been satisfied.

Accordingly, we affirm the remand for a new trial.

---

10. Respondent contends this court requires the showing of actual prejudice in appeals based upon juror bias. Respondent relies on *State v. Stufflebean,* 329 N.W.2d 314 (Minn.1983). That case is inapplicable. There, the trial court took no action contrary to the rules of procedure—the alleged error was judicial failure to remove a prospective juror on motion made before voir dire and not later renewed; appellant had unused peremptory challenges but failed to exercise a peremptory challenge to strike the prospective juror; and, unlike this case, no right to a peremptory challenge was denied.