*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1035**

Steven Lynn Oppel, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed January 30, 2017
Affirmed
Bratvold, Judge**

St. Louis County District Court
File No. 69DU-CR-10-554

Steven Lynn Oppel (pro se appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney's Office, Duluth, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BRATVOLD**, Judge

Appellant challenges the denial of his postconviction petition following his convictions for first- and second-degree criminal sexual conduct. Because we conclude that

many of appellant's claims are procedurally barred and that appellate counsel's representation did not fall below an objective standard of reasonableness, we affirm.

## FACTS

On February 18, 2010, appellant Steven Oppel was charged with one count of first-degree criminal sexual conduct involving his stepdaughter under Minn. Stat. § 609.342, subd. 1(a) (2008), and another count that was later removed. The state filed an amended complaint in August 2011 so that the first count alleged sexual penetration or contact under section 609.342, subdivision 1(a), and the second count alleged second-degree criminal sexual conduct charge under section 609.343, subdivision 1(h)(iii) (2008).

Between February 19, 2010 and December 5, 2011, Oppel appeared in court 13 times, and at each hearing the court discussed his right to counsel. Oppel repeatedly stated that he did not want a public defender and that he was in the process of retaining private counsel. The district court urged Oppel on several occasions to retain counsel.

Oppel represented himself throughout a four-day jury trial in December 2011, but accepted assistance from a court-appointed advisory counsel at trial. The evidence presented at trial was thoroughly recounted in this court's decision considering Oppel's direct appeal and will not be repeated here. *State v. Oppel*, No. A12-0875, 2013 WL 2923222, at *1–2 (Minn. App. June 17, 2013), *review denied* (Minn. Sept. 17, 2013). The jury convicted Oppel on both counts of criminal sexual conduct.

In his direct appeal, Oppel was represented by counsel, and this court affirmed the convictions. Oppel filed a petition for further review with the supreme court, which was

denied. Oppel then filed a petition for a writ of certiorari in the United States Supreme Court, which was denied. *Oppel v. Minnesota*, 134 S. Ct. 1518 (Mar. 10, 2014).

On March 7, 2016, Oppel filed a petition for postconviction relief, arguing that he was denied his right to counsel, new evidence existed that required a new trial, and he was denied effective assistance of appellate counsel. Oppel requested an evidentiary hearing on his petition. The state responded that Oppel's postconviction petition was time-barred. The postconviction court concluded that the petition was not time-barred, but also concluded that many of Oppel's arguments were procedurally barred because they were either raised in the direct appeal or were known but not raised. *See State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976) (discussing procedural bars to postconviction claims on appeal). Additionally, the postconviction court determined that Oppel's ineffective-assistance-of-appellate-counsel claims lacked merit; thus, it denied Oppel's request for a hearing and his postconviction petition. This appeal follows.

## D E C I S I O N

Initially, we examine the timeliness of Oppel's petition. Persons "convicted of a crime" who believe that the conviction or sentence violated their constitutional or other legal rights may initiate a postconviction relief proceeding "by filing a petition in the district court" where the conviction was entered. Minn. Stat. § 590.01, subd. 1 (2014). A petition for postconviction relief may not "be filed more than two years after . . . an appellate court's disposition of petitioner's direct appeal." *Id*., subd. 4(a)(2). We agree with

the postconviction court that Oppel's petition is timely because it was filed on March 7, 2016, within two years of the Supreme Court's denial of certiorari on March 10, 2014.

Next, we consider the procedural bars applicable to postconviction petitions. "A petition for postconviction relief after a direct appeal" cannot be based on claims that were available for review on direct appeal. Minn. Stat. § 590.01, subd. 1. Once a direct appeal has been taken, "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741. Exceptions to the *Knaffla* bar exist where the claims present novel legal issues or consideration is required in the interest of justice. *Hooper v. State*, 838 N.W.2d 775, 787 (Minn. 2013). However, an appellant "cannot recharacterize a claim previously litigated to avoid the *Knaffla* procedural bar." *Martin v. State*, 825 N.W.2d 734, 745–46 (Minn. 2013) (disallowing appellant's attempt to restate "an evidentiary issue in terms of ineffective assistance of trial counsel") (citation omitted).

Denial of a petition for postconviction relief is reviewed for an abuse of discretion. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). An abuse of discretion occurs where the postconviction court's "decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id*. (quotation omitted). Reversal is required only where "the postconviction court exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Matakis v. State*, 862 N.W.2d 33, 36 (Minn. 2015) (quotation omitted).

Oppel raises three primary arguments to support his claims of error by the postconviction court. Oppel argues that the postconviction court erred when it ruled that two of his claims were procedurally barred, specifically, his right-to-counsel claim, and his newly-discovered-evidence claim. Oppel also argues that the postconviction court erred when it ruled that his ineffective-assistance-of-appellate-counsel claims lacked merit. Each argument will be discussed in turn.[1]

## I.  Right To Counsel

Oppel asserts that he was denied the right to counsel at trial. He argues that his requests for an attorney were omitted from the transcript, and he did not know this until after the conclusion of his direct appeal. The postconviction court found that the transcript was available to Oppel before the direct appeal was over and Oppel failed to raise any omissions in the transcript. The postconviction court also determined that Oppel was improperly "attempting to re-characterize the denial of a public defender claim," but that claim was raised in Oppel's direct appeal and therefore is *Knaffla*-barred.

In Oppel's direct appeal, this court rejected his "denial of public defender" claim after determining that Oppel's "failure to obtain counsel after being granted several continuances to do so" resulted in him forfeiting his right to counsel. *Oppel*, 2013 WL 2923222, at *9 (citing *State v. Jones*, 772 N.W.2d 496, 506 (Minn. 2009)). Also, to the extent Oppel's current argument focuses on the transcript, the postconviction court correctly noted that the transcript was available before briefs were filed in the direct appeal

---

[1] No respondent's brief was filed in this appeal, which nonetheless proceeds on the merits. Minn. R. Civ. App. P. 142.03.

and, therefore, the transcript issue could have been but was not raised in the direct appeal. Thus, the postconviction court did not abuse its discretion when it found that Oppel's right-to-counsel argument is *Knaffla*-barred.

## II. Newly Discovered Evidence

Oppel next argues that "evidence not admissible at trial or never presented shows that he is not guilty of the crimes he was" convicted of committing. Oppel describes anticipated testimony by witnesses who were never called at trial, including witnesses listed on the state's original witness list and members of Oppel's family. The postconviction court found these claims to be a re-characterization of his denial-of-counsel claim, which was heard by this court on direct appeal. The postconviction court also determined that the testimony was "not new evidence" because the probable testimony of one witness, A.W., was known to Oppel before trial, and the probable testimony of two other witnesses, Oppel's nieces, could have been discovered before trial. *See Hodgson v. State*, 540 N.W.2d 515, 517 (Minn. 1995) (newly discovered evidence (1) must not be within petitioner's or counsel's knowledge before trial, (2) could not have been "discovered through due diligence before trial," (3) is not "cumulative, impeaching, or doubtful," (4) would likely produce a more favorable result at trial). Noting that the witnesses listed by the state were known to Oppel before the direct appeal, the postconviction court concluded that Oppel could have raised this evidence on direct appeal and failed to do so.

In his postconviction petition, Oppel conceded that he knew of the witnesses before his direct appeal.[2] Because any arguments known to an appellant but not raised at the time of the direct appeal will not be considered in a subsequent postconviction proceeding, the postconviction court did not abuse its discretion when it concluded that Oppel's claims of new evidence are *Knaffla*-barred. Alternatively, we agree with the postconviction court that Oppel fails to raise newly-discovered evidence because Oppel either knew or, through due diligence, could have discovered these witnesses before his trial.

## III. Ineffective Assistance of Appellate Counsel

Oppel argues that he was denied effective assistance of appellate counsel because counsel failed to raise the following issues in his direct appeal: (1) the trial court's erroneous dismissal of a seated juror instead of the alternate; (2) the absence of probable cause for first-degree criminal sexual conduct; (3) the prosecutor's closing argument that urged the jury to make improper inferences; (4) the trial court's ruling that victim C.W.'s previous allegation of sexual abuse was inadmissible evidence; and (5) the trial court's failure to advise Oppel that he had a right to have advisory counsel take over his defense. Additionally, Oppel claims appellate counsel provided ineffective assistance for technical failings, such as incorrectly citing the record for a videotaped interview, failing to raise all inconsistencies between C.W.'s testimony and her first witness interview; and failing to cite every instance of prosecutorial misconduct. We divide these issues into four categories:

---

[2] Although Oppel concedes he knew of the witnesses, he still claims that he should be afforded a new trial because their testimony would have been favorable to him; thus this court addresses the issue.

7

the alternate juror issue, appellate strategy issues, citations to the record, and prosecutorial misconduct.

Ineffective-assistance-of-counsel claims are analyzed using "the two-prong test articulated in *Strickland.*" *Fields v. State*, 733 N.W.2d 465, 468 (Minn. 2007); *see also Strickland v. Washington*, 104 S. Ct. 2052, 2064, 466 U.S. 668, 687 (1984). First, an appellant must show that "counsel's representation fell below an objective standard of reasonableness." *Fields*, 733 N.W.2d at 468 (quotation omitted). Second, an appellant must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* (quotation omitted). For a claim to succeed, both prongs must be met. *Id*. "There is a strong presumption that a counsel's performance falls within the wide range of 'reasonable professional assistance.'" *State v. Jones,* 392 N.W.2d 224, 236 (Minn. 1986) (quoting *Strickland,* 104 S. Ct. at 2065, 466 U.S. at 690).

An attorney's performance is objectively unreasonable when the attorney does not use "the customary skills and diligence that a reasonably competent attorney would perform under the circumstances." *State v. Doppler*, 590 N.W.2d 627, 633 (Minn. 1999). Courts "will not review attacks on counsel's trial strategy." *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004). Further, appellate counsel need not raise all possible claims on direct appeal so long as counsel has legitimately decided that a claim would not prevail. *Schneider v. State*, 725 N.W.2d 516, 523 (Minn. 2007) (holding no ineffective assistance of counsel because "appellate counsel did not have a duty to include all possible claims on direct appeal, but rather was permitted to argue only the most meritorious claims"). A

postconviction evidentiary hearing must be held unless the record "conclusively" shows that the petitioner is not entitled to relief. *Wright v. State*, 765 N.W.2d 85, 91 (Minn. 2009).

The postconviction court found *some* of Oppel's alleged omissions were addressed by this court in the direct appeal. This was error. Ineffective-assistance-of-appellate-counsel claims are not *Knaffla*-barred because appellants cannot raise them in a direct appeal. *Dobbins v. State*, 788 N.W.2d 719, 728 n.2 (Minn. 2010); *Schleicher v. State*, 718 N.W.2d 440, 449 (Minn. 2006). For other ineffective-assistance claims, the postconviction court determined that "appellate counsel's representation did not fall below an objective standard of reasonableness" and the "result of the proceeding would [not] have been different had appellate counsel raised these additional claims." We review each of Oppel's ineffective-assistance claims.

## A.    Alternate Juror

Oppel asserts that appellate counsel failed to challenge the trial court's mistaken dismissal of a juror. At trial, and after a discussion with the judge on the record, the parties agreed on the identity of the alternate juror. After the trial ended, but before deliberations began, the judge excused a different juror. Because the trial court did not first obtain the permission of the parties, Oppel argues this is reversible error that appellate counsel should have raised on appeal.

A trial court "may impanel alternate jurors," but alternates who do not replace a juror must be dismissed before the case is submitted to the jury. Minn. R. Crim. P. 26.02, subd. 9. "Alternate jurors replace jurors  in  the order the alternates were drawn." *Id.*  "No

9

additional peremptory challenges are allowed for alternate jurors." *Id*. Trial courts have discretion in managing the jury. *See State v. James*, 638 N.W.2d 205, 210 (Minn. App. 2002) (stating that trial court has discretion to dismiss an inattentive juror), *review denied* (Minn. Mar. 27, 2002); *State v. Yant*, 376 N.W.2d 487, 491 (Minn. App. 1985) (recognizing trial court's discretion to dismiss sleeping juror), *review denied* (Minn. Jan. 17, 1986). It is within the discretion of the trial court to seat alternate jurors. *State v. Gillespie*, 710 N.W.2d 289, 294 (Minn. App. 2006), *review denied* (Minn. May 16, 2006); Minn. R. Crim. P. 26.02, subd. 9. Generally, dismissal of a juror causes no prejudice "[b]ecause the excused . . . juror must be replaced by a veniremember subject to the same jury-selection process." *James*, 638 N.W.2d at 210.

Oppel cites *Alholm v. Wilt* for the premise that it is reversible error to sua sponte seat an alternate juror without the parties' approval.[3]  394 N.W.2d 488, 491–94 (Minn. 1986). Oppel's reliance on *Alholm* is misplaced for two reasons. First, *Alholm* is a civil case and the civil rule discussed in *Alholm* has since been abrogated.[4] The relevant rules of

---

[3] In *Alholm*, the district court judge randomly dismissed a juror as the alternate at the close of the case. 394 N.W.2d at 491. Appellant's counsel, being unfamiliar with the local practice of randomly selecting an alternate juror, did not exercise a peremptory challenge or a challenge for cause on the last juror seated, as he believed the last juror seated would be the alternate, and the chance of her sitting on the jury would be small. *Id*. The supreme court held that this method of jury selection was reversible error, in part because a peremptory challenge may be used to exclude an alternate. *Id*. at 493–94.

[4] As was relevant in *Alholm*, Minnesota Rule of Civil Procedure 47.02 included two key provisions.  First, "An alternate juror who does not replace a principal juror shall be discharged after the jury retires to consider its verdict." Second, "If one or two alternate jurors are called, each party is entitled to one peremptory challenge in addition to those otherwise allowed by law. The additional peremptory challenge may be used only against an alternate juror, and the other peremptory challenges allowed by law shall not be used

10

criminal procedure, which govern here, differ from the civil rule discussed in *Alholm* and no peremptory strike is tied to the alternate jurors under the applicable criminal rules. Minn. R. Crim. P. 26.02, subds. 6, 9. Additionally, the rules of criminal procedure give the district court discretion over the management of the jury and specifically in seating alternate jurors.

Second, because jury management is left to the district court's discretion, Oppel's appellate counsel did not provide ineffective assistance in not raising this issue in Oppel's direct appeal. Failing to raise an issue that is reviewed for abuse of the trial court's discretion does not fall below an objective standard of reasonableness because appellate counsel may have legitimately concluded that the issue was unlikely to prevail. Also, Oppel fails to articulate any prejudice as a result of the trial court's decision to dismiss the alternate, so this issue also fails under the second *Strickland* prong.

B. **Appellate Strategy**

Oppel argues that his appellate counsel was ineffective because counsel failed to raise claims regarding probable cause, arguments by the prosecutor that invited the jury to make inferences unsupported by the evidence, the district court's adverse evidentiary ruling on C.W.'s prior sexual history, and the district court's failure to inform Oppel that advisory counsel could take over his defense.[5]

---

against the alternates." Minn. R. Civ. P. 47.02, *abrogated by* Minn. R. Civ. P. 47.04 ("The court may for good cause excuse a juror from service during trial or deliberation.").

[5] We note that Oppel raised none of these issues in his pro se brief on direct appeal. Oppel also makes no argument that he was denied the opportunity to raise these issues in his pro se brief. As such, Oppel's arguments are not well-taken. *Case v. State*, 364 N.W.2d 797, 801 (Minn. 1985) (Wahl, J., concurring specially).

We conclude that each of these issues is not subject to review because the decision involved appellate strategy. Appellate counsel need not raise all possible claims on direct appeal so long as counsel has legitimately decided that a claim will not prevail. *Schneider*, 725 N.W.2d at 523. Just as matters of trial strategy will not be reviewed by an appellate court, *Opsahl*, 677 N.W.2d at 421, this court also will not review matters of appellate strategy. Appellate strategy, like trial strategy, is based on counsel's "reasoned strategic judgment" and includes counsel's decisions where a host of choices are present. *Wiggins v. Smith*, 123 S. Ct. 2527, 2537, 539 U.S. 510, 526 (2003); *see also Andersen v. State*, 830 N.W.2d 1, 13 (Minn. 2013) (describing issues categorized as trial strategy). With this framework in mind, we review Oppel's four ineffective-assistance claims.

First, Oppel argues that appellate counsel was ineffective because counsel did not argue that no probable cause supported the sexual contact charge under Minn. Stat. § 609.342, subd. 1. Importantly, Oppel was convicted of first-degree criminal sexual conduct—penetration under section 609.342, subdivision 1(a) (2008); further, the definition of sexual penetration necessarily includes the requirements for sexual contact. *See* Minn. Stat. § 609.341, subds. 11, 12 (2008) (stating that sexual contact includes intentional touching of intimate parts by a person in a position of authority, including over the clothing, and sexual penetration means "any intrusion however slight into the genital or anal openings").

Because appellate counsel could have reasonably concluded that a probable-cause challenge to the sexual contact charge was likely to fail on appeal, appellate counsel's

failure to raise the issue was appellate strategy and will not be reviewed. *See Wright*, 765 N.W.2d at 93 (holding no ineffective assistance of appellate counsel where appellate counsel did not assert an insufficiency-of-the-evidence claim because counsel could have legitimately concluded the claim would fail). We note that appellate counsel raised sufficiency of the evidence for the penetration conviction in the direct appeal. *Oppel*, 2013 WL 2923222 at *5. This illustrates that failing to raise probable cause for the sexual contact charge was a strategic decision. Additionally, the jury's finding of guilt supports the premise that a probable cause challenge was likely to fail on appeal. *See State v. Smith*, 876 N.W.2d 310, 324 (Minn. 2016) ("[t]he existence of probable cause is further confirmed by the trial jury's guilty verdicts.").

Second, Oppel argues appellate counsel's failure to raise unsupported inferences in the prosecutor's closing argument was ineffective assistance. Regarding the prosecutor's closing argument, appellate counsel made a similar argument in the direct appeal, and argued other unsupported inferences by the prosecutor; this court held no error occurred. *Oppel*, 2013 WL 2923222, at *6–8. We conclude that appellate counsel's decision not to raise other unsupported inferences by the prosecutor was strategic.

Third, Oppel contends appellate counsel's failure to raise the trial court's evidentiary ruling to exclude evidence of C.W.'s prior allegations of sexual abuse was ineffective assistance. But the trial court cited legal authority to support its decision and has discretion in this ruling. Thus, appellate counsel's "reasoned strategic judgment" supported the view that the ruling was discretionary and likely to fail on appeal, and, therefore, appellate counsel's failure to raise the issue was strategic. *See Opsahl*, 677

13

N.W.2d at 421 (finding that counsel's failure to pursue alternative-perpetrator defense was matter of trial strategy).

Finally, Oppel asserts that appellate counsel provided ineffective assistance because counsel failed to argue that Oppel was entitled to have advisory counsel take over the defense if so requested by him. The trial court appointed advisory counsel and told Oppel that "he would be available to counsel with you if you deem that necessary during the trial." The trial court also stated that advisory counsel was present "to help you if you need advice, procedurally or otherwise, you could ask to consult with him." By telling Oppel he could decide how to use advisory counsel, the trial court indicated that advisory counsel was appointed under Minnesota Rule of Criminal Procedure 5.04, subdivision 2(1), which states that a defendant retains the right to determine how to use advisory council and that these decisions may affect a later request for counsel to assume full representation.

Based on this record, we conclude that the trial court did not appoint advisory counsel under subdivision 2(2), where the court must advise the defendant of a right to have advisory counsel take over the representation. Minn. R. Crim. P. 5.04, subd. 2(2). Thus, Oppel's appellate counsel, after reviewing the rule and the record, may have legitimately determined that this claim lacks merit and was not likely to prevail. Thus, this was a matter of appellate strategy and will not be reviewed.[6]

---

[6] While this appeal was pending, Oppel filed a letter citing supplemental authority, pursuant to Minn. R. Civ. App. P. 128.05, asking this court to consider *State v. Chavez-Nelson* in support of his appeal. 882 N.W.2d 579 (Minn. 2016). In *Chavez-Nelson*, the supreme court held a defendant was entitled to have advisory counsel assume full representation during his murder trial under rule 5.04, subdivision 2(2), but the trial court's error was harmless. *Id*. at 586–87. We conclude that *Chavez-Nelson* is inapposite because advisory counsel in

14

## C.    Citations to the Record

Oppel argues that appellate counsel was ineffective because counsel incorrectly cited the record regarding whether Oppel had agreed to the admission of C.W.'s videotaped interview and appellate counsel failed to cite the entire record regarding C.W.'s testimony.

On direct appeal, appellate counsel challenged both the admission of the videotaped interview and C.W.'s testimony. *Oppel*, 2013 WL 2923222, at *3, 5. Failure to cite the entire record regarding an issue on appeal does not fall below an objectively reasonable standard of performance because the appeal must be reviewed as a whole. *See State v. Bailey*, 270 Minn. 64, 70, 132 N.W.2d 720, 724 (1965) (stating rule that "improvident strategy, bad tactics, mistake, carelessness, or inexperience do not necessarily amount to ineffective assistance of counsel unless taken as a whole the trial was a mockery of justice") (quotation omitted). Here, appellate counsel's conduct did not fall below an objectively reasonable standard of performance. Further, even assuming appellate counsel's citation was deficient, this court had access to, and reviewed, the entire trial record on appeal, thus eliminating any potential prejudice to Oppel. In other words, Oppel also has not established the second *Strickland* prong.

## D.    Prosecutorial Misconduct

Oppel asserts that appellate counsel was ineffective because counsel did not "cite the entire record" to establish prosecutorial misconduct during closing argument regarding

---

Oppel's case was appointed under Minn. R. Crim. P. 5.04, subdivision 2(1). Thus, our analysis does not change.

"justice for children."[7] The postconviction court declined to analyze this argument because it was raised in Oppel's direct appeal, and this court determined that the prosecutor's statements constituted misconduct, but "did not have a substantial impact on the jury's verdict." *Oppel*, 2013 WL 2923222, at *7. This court also concluded that this case was similar to other decisions holding that a prosecutor's similar reference to "justice for children," when taken in context, did not violate an appellant's substantial rights. *Id*.; *see State v. Gaulke*, 281 Minn. 327, 330, 161 N.W.2d 662, 664 (1968); *State v. Friend*, 385 N.W.2d 313, 322 (Minn. App. 1986), *review denied* (Minn. May 22, 1986).

Oppel's point in this appeal is that appellate counsel did not cite every instance where the prosecutor referred to "justice for children." Appellate counsel's failure to specifically refer to every statement does not fall below an objective standard of reasonableness. Here, appellate counsel specifically argued that misconduct occurred, and cited two statements by the prosecutor regarding "justice for children." *Oppel*, 2013 WL 2923222, at *6. Citing some but not every instance in the record is reasoned strategic judgment. Moreover, on direct appeal, this court had access to, and reviewed, the entire record, thus eliminating any potential prejudice to Oppel. Thus, appellate counsel's failure to cite the entire record on this issue does not rise to the level of ineffective assistance of appellate counsel.

---

[7] In making this argument, Oppel relies on *State v. Jackson*, No. A12-1070, 2013 WL 1943001 (Minn. App. May 13, 2013), *review denied* (Minn. Aug. 6, 2013), which is an unpublished decision of this court and not precedent. Minn. Stat. § 480A.08, subd. 3 (2016); *see also Vlahos v. R&I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 676 n.3 (Minn. 2004) (stating that unpublished opinions are not precedential) (citing *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 801 (Minn. App. 1993)).

Based on our careful review, the record establishes that Oppel is not entitled to relief on any of his claims. Thus, the postconviction court did not err in failing to hold an evidentiary hearing. In *Wright*, the supreme court held that no evidentiary hearing was required where appellant claimed appellate counsel failed to raise issues on appeal. 765 N.W.2d at 91–92. "[C]ounsel is under a duty to raise only meritorious claims [and] [c]ounsel does not act unreasonably by not asserting claims that counsel could have legitimately concluded would not prevail." *Id*. at 91 (citation omitted). Because the postconviction court did not err in determining that Oppel's ineffective-assistance-of-appellate-counsel claims lacked merit, it did not abuse its discretion in summarily denying Oppel's petition for postconviction relief.

**Affirmed.**