**Sally (Pratt) COX, Respondent,**

v.

**CROWN COCO, INC., et al., Appellants.**

No. C2–95–1834.

Court of Appeals of Minnesota.

March 5, 1996.

494

Don L. Bye, Duluth, Aaron R. Bransky, Halverson Watters, Downs, Reyelts & Bateman, Ltd., Duluth, for Respondent.

Gregg J. Cavanagh, Leonard, Street and Deinard, Minneapolis, for Appellants.

Considered and decided by NORTON, P.J., and LANSING and FOLEY*, Judges.

## OPINION

NORTON, Judge.

Appellants challenge a judgment holding them liable for retaliatory discharge and defamation. The trial court denied appellants' motion for judgment notwithstanding the verdict or a new trial. We affirm.

## FACTS

Respondent Sally Cox brought this action against her former employer, appellant Crown CoCo, Inc., and her former supervisor, appellant Alice Lindstrom, alleging retaliatory discharge and defamation. Cox alleged that her discharge violated the Minnesota whistleblower statute and the Minnesota Occupational Safety and Health Act. *See* Minn.Stat. §§ 181.932 (whistleblower), 182.669 (MOSHA) (1992).

Crown CoCo is a Minneapolis corporation that operates E–Z Stop gas stations/convenience stores in Minnesota, Michigan, and Wisconsin. Lindstrom works as a regional manager for Crown CoCo. Cox began working for Crown CoCo as an assistant manager in November 1991. In September 1992, Cox became the manager of the E–Z Stop in Aitkin. Cox reported directly to Lindstrom.

On March 16, 1993, malfunctioning furnaces began emitting a fuel oil smell into the store. Unable to contact Lindstrom, Cox called Crown CoCo's maintenance director, who suggested she call a local heating contractor to investigate the problem. Although the contractor thought he had found the problem with one of the furnaces and had resolved it temporarily, the noxious fumes were even worse the next day, March 17. The fumes made Cox and other employees ill at work; by 10:30 a.m., Cox left work to seek medical attention. She did not return to work until March 23.

In Cox's absence, the assistant manager, Cheryl Kehn, called in a second heating contractor, who eventually discovered that the furnace needed to be replaced. The contractor turned off the furnace and told the employees that he could not restart it. Crown CoCo refused to close the store, despite the lack of heat. Lindstrom suggested that employees run the furnace intermittently and provided two space heaters to keep the store warm until the new furnace could be installed on April 1, 1993. Lindstrom also ordered employees to open the deli and serve food in spite of the fact that the health inspector directed her to close the deli and dispose of all food potentially tainted by the fumes.

Cox told Crown CoCo officials and other employees on March 17 that she believed the store to be unsafe because of the fumes. Lindstrom told employees that Cox was taking the problem "too seriously." Cox also discussed her concerns with the Minnesota

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

Occupational Safety and Health Administration (MOSHA). Then, on March 19, she filed a confidential written complaint with MOSHA concerning the potential health and safety violations at the E–Z Stop. MOSHA then contacted Crown CoCo about the complaint. Cox claims that Crown CoCo then terminated her employment because she reported these potential violations.

In contrast, Crown CoCo claims to have terminated Cox because of her performance, and claims to have made that decision before the furnace problem arose. Crown CoCo's director of finance, Domenic Losurdo, testified at trial that audit reports showed $5,328 in shortages in the till during Cox's six-month assignment at the Aitkin store. Losurdo considered the shortages to be a sign of possible theft and misrung sales. From the recurring shortages, Losurdo concluded that the manager, Cox, "could not control the store."

Losurdo testified that, after discussing the audits with senior area manager Bob Gumatz on March 13, they concluded that they "needed to make a change in the manager at the Aitkin store." All of the area managers discussed the audits at the regularly scheduled operations meeting on March 15 and agreed to change the manager at the Aitkin store. Losurdo testified that, as of that March 15 meeting, Crown CoCo had decided to terminate Cox; that issue was never considered again. Before Lindstrom could fire Cox, however, the furnace incident occurred and put Cox on sick leave until March 23. When Cox returned to work, Lindstrom terminated her.

At trial, Cox also claimed that Lindstrom defamed her by telling other E–Z Stop employees that Cox had slashed her tires after she had been fired. According to the testimony of Cox's witnesses, Lindstrom told three employees that they should move their cars from the side of the building, because "Sally had slashed her tires." The employees testified that Lindstrom repeatedly made these accusations throughout the day.

At the conclusion of trial, the jury returned a verdict for Cox on all claims, awarding her $25,000 for past economic loss, $30,000 for future economic loss, $50,000 for past emotional distress, $20,000 for future emotional distress, and $25,000 for harm to her reputation and mental distress, humiliation and embarrassment. The court denied Crown CoCo's motion for judgment notwithstanding the verdict (JNOV) or a new trial, awarded Cox $31,562.50 in attorney fees, and added pre- and post-verdict interest to the judgment.

## ISSUES

1. Did the trial court err in denying JNOV on the retaliatory discharge claim?

2. Did the trial court properly instruct the jury on the burden of proving retaliatory discharge?

3. Did the trial court err in ruling that Lindstrom was not entitled to a qualified privilege?

4. Did the trial court abuse its discretion by allowing Cox to present rebuttal testimony?

5. Did the trial court err in ruling that the damages awarded by the jury were not the product of sympathy or prejudice?

6. Did the trial court abuse its discretion in creating the special verdict form?

7. Did the trial court err when it ruled that comments of Cox's counsel did not warrant a new trial?

8. Did the trial court abuse its discretion when it instructed the jury about discounting future damages to present value?

9. Did the trial court abuse its discretion in awarding attorney fees?

10. Did the trial court err in awarding preverdict interest on damages and post-judgment interest on attorney fees?

## ANALYSIS

Crown CoCo asserted several grounds for judgment notwithstanding the verdict (JNOV) or a new trial. The trial court denied the motion in its entirety. In reviewing the denial of JNOV, this court must affirm if the record contains "any competent evidence reasonably tending to sustain the verdict." *Rettman v. City of Litchfield*, 354 N.W.2d 426, 429 (Minn.1984).

A motion for judgment notwithstanding the verdict admits every inference reasonably tending to be drawn from the evidence as well as the credibility of the testimony for the adverse party. Unless we are able to determine that the evidence is practically conclusive against the verdict, or that reasonable minds could reach but one conclusion against the verdict, the trial court's order denying the motion for judgment notwithstanding the verdict should stand.

*Seidl v. Trollhaugen, Inc.* 305 Minn. 506, 507, 232 N.W.2d 236, 239 (1975).

### 1. Prima facie case of retaliatory discharge

Crown CoCo alleges that the trial court erred in denying JNOV, because Cox has failed to establish a prima facie case of retaliatory discharge. When evaluating retaliatory discharge claims, Minnesota courts apply the three-step test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Graham v. Special Sch. Dist. No. 1,* 472 N.W.2d 114, 119 n. 7 (Minn.1991); *Hubbard v. United Press Int'l,* 330 N.W.2d 428, 444 (Minn.1983).

■ To establish a prima facie case of retaliation, Cox must show:

1) statutorily-protected conduct by the employee; 2) adverse employment action by the employer; and 3) a causal connection between the two.

*Hubbard,* 330 N.W.2d at 444. Cox has established the second factor; her termination is the basis of this suit. The two remaining factors are at issue.

■ At trial, Cox contended that Crown CoCo fired her because she reported the company's possible violation of the Minnesota Occupational Safety and Health Act, Minn. Stat. § 182.669 (1992) (MOSHA). She argued that such retaliation violated both MOSHA and the Minnesota whistleblower statute, Minn.Stat. § 181.932 (1992).

MOSHA provides:

Any employee believed to have been discharged or otherwise discriminated against by any person because such employee has exercised any right authorized under the provisions of sections 182.65 to 182.674 may, within 30 days after such alleged discrimination occurs, file a complaint with the commissioner alleging the discriminatory act. * * * An employee may bring a private action in the district court for relief under this section.

Minn.Stat. § 182.669, subd. 1.

Crown CoCo contends that Cox's actions, in reporting the furnace problems, were not worthy of protection here, because no violation of law has been established. *See Hubbard,* 330 N.W.2d at 444 (requiring proof of "statutorily protected conduct" to establish prima facie case of retaliation). We note, however, that the law protecting whistleblowers prohibits an employer from discharging an employee who has

in good faith, report[ed] a violation or *suspected violation* of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official.

Minn.Stat. § 181.932, subd. 1(a) (emphasis added).

Cox reported to MOSHA Crown CoCo's lack of cooperation in dealing with the noxious fumes.[1] Lindstrom and Crown CoCo refused to close the store during the time it was contaminated with fumes, even though employees were becoming ill from the fumes, the store basically had no heat, and the health inspector had ordered them not to serve food. Based on these facts, Cox had a good faith suspicion of health code and safety violations in the workplace sufficient to invoke protection of the whistleblower statute.

■ The jury also determined that Cox's termination was causally connected to her reports to authorities. We must examine the jury's verdict in a light most favorable to Cox, the prevailing party. *Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149, 155 (Minn.

---

**1.** We see no merit in Crown CoCo's argument that Cox "was" the "employer" here because she was managing the E–Z Stop. Crown CoCo has area managers and upper management that control the major decisionmaking for the company. Cox called them for help. When they did not respond promptly, she contacted MOSHA.

1982). "We will overturn a jury verdict only if it is manifestly contrary to the evidence." *Id.* In a case such as this, where the jury heard conflicting evidence on an issue, the court will sustain the jury's determination. *Peterson v. Little–Giant Glencoe Portable Elevator Div. of Dynamics Corp.*, 366 N.W.2d 111, 115 (Minn.1985). "[W]e limit our review even further because the jury has considered the demeanor of the witnesses." *Hudson,* 326 N.W.2d at 155.

In an effort to show no causal connection between the furnace problems and Cox's termination, Crown CoCo presented evidence that it decided to terminate Cox on March 13, before furnace problems arose at the E–Z Stop. Witnesses for Cox, however, testified to Lindstrom's disfavor with how Cox handled the furnace situation; she told employees that Cox took the problem too seriously. In addition, MOSHA contacted Crown CoCo about the potential health and safety danger after receiving Cox's complaint. Even though the complaint was confidential, the jury could have inferred from this evidence that Crown CoCo terminated Cox because it believed she had filed the MOSHA complaint.

This record is sufficient to establish the three factors of the prima facie case of retaliatory discharge.

**2. Jury instructions**

■■■ Crown CoCo contends the district court improperly instructed the jury on the burden of proof for Cox's retaliatory discharge claim. A trial court has "considerable latitude" when selecting language for jury instructions. *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986). The instructions will withstand scrutiny so long as the charge as a whole conveys to the jury a clear and correct understanding of the law. *Id.*

Crown CoCo alleges "the jury was never told" that Cox "had the obligation to prove" that Crown CoCo's reasons for termination were "pretextual." The transcript reveals, however, that the trial court gave the in-

struction that Crown CoCo had requested, which included the "pretext" language that Crown CoCo alleges is missing. The instructions to the jury required Cox to prove, by a preponderance of the evidence, that Crown CoCo's proffered reasons "were a pretext for terminating [her] * * * because she reported a violation of the [law] * * *."

■■■ Crown CoCo also contends the trial court gave the wrong standard of proof by requiring Cox to show "an illegitimate reason more likely than not motivated the discharge decision." This language comports with the Minnesota Supreme Court's decision in *McGrath v. TCF Bank Sav.*, 509 N.W.2d 365, 366 (Minn.1993). There, the court confirmed that, in retaliatory discharge cases, a plaintiff may prevail "if an illegitimate reason 'more likely than not' motivated the discharge decision," even if an employer has given a legitimate reason for the discharge. *Id.* (quoting *Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 627 (Minn. 1988)). An employer cannot avoid liability for retaliatory discharge based on an impermissible reason simply because it also offered other reasons that were not pretextual. *Id.*

■■■ The language of the instructions here meets the standards set forth in *McGrath* and *McDonnell Douglas* and, contrary to Crown CoCo's argument, left the burden of proof with Cox.[2] Read as a whole, the instructions gave the jury a clear and correct statement of the law on retaliatory discharge. *See Alholm,* 394 N.W.2d at 490 (requiring jury charge as a whole be clear and correct).

**3. Defamation**

■■■ Crown CoCo contends the district court erred when it ruled that Lindstrom was not entitled to a qualified privilege. In order for a communication to be privileged, it must have been made on a proper occasion, made from a proper motive, and be based on reasonable or probable

---

**2.** Crown CoCo has waived the substantive issues of whether it presented a legitimate reason for discharge and whether Cox refuted it as pretext, because Crown CoCo failed to raise these issues to the trial court in the motion for JNOV or new

trial. *See Gruenhagen v. Larson,* 310 Minn. 454, 457–58, 246 N.W.2d 565, 568 (1976) (holding that when party fails to raise issue in motion for new trial, appellate court will not review it).

cause. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256–57 (Minn.1980) (citing *Hebner v. Great N. R.R.*, 78 Minn. 289, 292, 80 N.W. 1128, 1129 (1899)). To overcome a qualified privilege, a plaintiff must prove actual malice. *Id.* at 257.

At issue here are the accusations Lindstrom made about Cox slashing her tires. Lindstrom allegedly made these statements in an attempt to protect the E–Z Stop employees from harm.

Although Lindstrom may have had a proper purpose in seeking to protect other employees and possibly had a proper occasion immediately after her tires were slashed, Lindstrom and Crown CoCo are not entitled to a qualified privilege unless they had "reasonable or probable grounds for believing in the validity of the statement, even though hindsight might show the statement to be false." *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 380 (Minn.1990) (holding employer ineligible for qualified privilege, because it had taken no steps to investigate before publicly accusing employee, had not acted in reasonably prudent manner, and lacked reasonable or probable grounds for defamatory statement).

Typically, the supreme court has found reasonable or probable grounds for making potentially defamatory statements when the employee has admitted some wrongdoing and the employer has investigated the allegations. *See, e.g., McBride v. Sears, Roebuck & Co.*, 306 Minn. 93, 95–97, 235 N.W.2d 371, 373–74 (1975) (holding statements privileged; employer had investigated allegations and confronted employee, who admitted wrongdoing); *Hebner*, 78 Minn. at 293–94, 80 N.W. at 1129–30 (holding probable cause existed; employee admitted charges after employer investigated and warned him to correct his conduct).

Contrary to those cases, but similar to *Wirig*, 461 N.W.2d at 380–81, the record here contains no evidence of reasonable or probable grounds for Lindstrom's statements. Lindstrom did not investigate her suspicions or confront Cox with her accusations before she made the defamatory statements to the other employees. On the contrary, trial testimony is that Lindstrom jumped to the conclusion that Cox was the perpetrator as soon as she discovered damage to her car and immediately published that information without any reasonable or probable grounds for believing her statements were true. Lindstrom and Crown CoCo are not entitled to a qualified privilege.

### 4. Rebuttal testimony

 Crown CoCo argues the trial court committed prejudicial error by allowing Cox to give rebuttal testimony. What constitutes proper rebuttal evidence rests within the trial court's discretion. *State v. Swanson*, 498 N.W.2d 435, 440 (Minn.1993). After redirect examination, counsel for Cox gave notice that he may recall her, anticipating the need for her rebuttal testimony after Lindstrom's testimony for the defense. When Crown CoCo failed to call Lindstrom as a witness, the court permitted Cox to present brief rebuttal testimony responding to accusations that she had slashed Lindstrom's tires. Crown CoCo cross-examined her, but declined to present surrebuttal testimony. Given this sequence of events, the trial court did not abuse its discretion in allowing Cox to give rebuttal testimony.

### 5. Damages award

 Crown CoCo challenges the award of $70,000 for past and future emotional distress, contending the award is excessive and is the product of jury sympathy and prejudice. The trial court has discretion to determine whether damages are excessive; we will not overturn its decision absent an abuse of discretion. *Advanced Training Sys. v. Caswell Equip. Co.*, 352 N.W.2d 1, 11 (Minn.1984). When evaluating whether the verdict is excessive, the trial court must consider all the evidence, the parties' demeanors, and the circumstances of trial. *Johnson v. Washington County*, 518 N.W.2d 594, 602 (Minn.1994). The test for setting aside a verdict as excessive is whether the amount of damages "shocks the conscience." *Verhel v. Independent Sch. Dist. No. 709*, 359 N.W.2d 579, 591 (Minn.1984).

The record supports the jury's award. Cox testified that the nature and manner of

her firing was devastating, that the firing publicly embarrassed her in her small community, and that people not employed by the E–Z Stop mentioned the tire slashing incident to her. She felt that people did not trust her and, in addition, the termination left her distrustful of others. Given this record, we cannot say that the damages were so excessive as to shock the conscience. The trial court did not abuse its discretion in upholding the damages award.

### 6. Special verdict form

 The trial court has the discretion to choose the particular wording of a special verdict form. *Covey v. Detroit Lakes Printing Co.*, 490 N.W.2d 138, 142 (Minn.App. 1992). Crown CoCo alleges that a new trial is necessary because the special verdict form in this case was imbalanced and led the jury to inflate the damages award. We disagree.

Cox claimed damages for retaliatory discharge and for defamation. The special verdict form included four questions about retaliation damages and one question on defamation damages; the language in the special verdict complies with the jury instruction guide in effect at the time of trial. 4 Michael K. Steenson, *Minnesota Practice* Special Verdict Form Number 8 (Supp. 1992).

The record does not contain duplicative requests for damages. Cox did not attempt to recover on separate theories of liability for the same harm; she alleged distinct damages with respect to each claim. The trial court did not abuse its discretion when selecting the specific language for the special verdict form.

### 7. Minn.R.Civ.P. 49.01

 Crown CoCo next contends counsel for Cox violated Minn. R. Civ. P. 49.01 during closing argument. Rule 49.01 prohibits the court and counsel from informing "the jury of the effect of its answers on the outcome of the case." Generally, a contemporaneous objection to improper remarks and a request for curative instructions are prerequisites to receiving a new trial on appeal. *Hake v. Soo Line R.R.*, 258 N.W.2d 576, 582 (Minn.1977). Crown CoCo's failure to object is fatal to this issue.

 Even if we were to consider this issue, however, Crown CoCo could receive a new trial only if the violation of rule 49.01 caused substantial prejudice. *Johnson v. O'Brien*, 258 Minn. 502, 508–09, 105 N.W.2d 244, 248 (1960). The appellate court generally does not find prejudicial error, despite violation of this rule, when evidence in the record supports the jury's findings. *Id.*, 105 N.W.2d at 249; *Richfield Bank & Trust Co. v. Sjogren*, 309 Minn. 362, 369–70, 244 N.W.2d 648, 652 (1976). In this case, the evidence supports the jury's specific findings in the verdict.

### 8. Discounting of future damages

 Crown CoCo argues that it is entitled to a new trial because the jury failed to discount the award of future damages to present value. Not all future damages are subject to discounting to present value. Specifically, damages for pain and suffering are not subject to reduction, although damages for future medical expenses and future lost earnings may be discounted. *Busch v. Busch Constr.*, 262 N.W.2d 377, 396–97 (Minn.1977); *Olsen v. Special Sch. Dist. No. 1*, 427 N.W.2d 707, 714 (Minn.App.1988) (future medical expenses subject to discounting by jury).

> Unlike loss of earnings or the cost of a medical attendant, pain, suffering, and disability recoveries cannot be reduced to mathematical formulae, and on this theory they have been exempted from deductions for present worth.

*Ahlstrom v. Minneapolis, St. Paul & Sault Ste. Marie R.R.*, 244 Minn. 1, 29–30, 68 N.W.2d 873, 891 (1955), *overruled on other grounds by Busch*, 262 N.W.2d at 396–97.

 Crown CoCo also contends the lack of expert testimony on the discounting factors is reversible error, but has provided no authority to support the theory that a plaintiff must provide expert testimony on the discount rate. Crown CoCo requested an instruction on discounting damages here, but failed to present any expert testimony on the issue. *Cf. Olsen*, 427 N.W.2d at 714 (review-

ing damage award because discounting statute did not apply; holding that, on remand, defendant *"may* present evidence of discounting factors and request an instruction" (emphasis added)).

The trial court based the instruction for discounting future damages upon JIG 162. *See* 4 *Minnesota Practice* CIVJIG 162 (Supp. 1992). The instruction given read:

> After finding the dollar amount of future damages for loss of future earning capacity you must then find the present cash value of such amount and award only the present cash value of such future damages. This simply means that if you find that the plaintiff is entitled to recover any elements of damage which require you to determine their present value, you must take into consideration that money, if invested, will earn interest until the time in the future when these losses will actually occur. Therefore, you must reduce any award of such damages to compensate for the reasonable earning power of the money.

This statement clearly expresses the law and the process the jury should follow if discounting damages.

 "The jury is generally left to its own good discretion as to what discount factors should actually be used." *Busch,* 262 N.W.2d at 396. The instructions gave the jury a sound legal basis for discounting the verdict. No reversible error occurred here.

### 9. Attorney fees

 Crown CoCo alleges that the trial court abused its discretion in awarding attorney fees on the defamation claim, as well as on the retaliatory discharge claim. Crown CoCo contends the court should have apportioned one-third of the fees toward the defamation claim, because it was one of the three claims Cox raised. We disagree. The award of attorney fees rests within the discretion of the trial court. *Becker v. Alloy Hardfacing & Eng'g Co.,* 401 N.W.2d 655, 661 (Minn.1987).

In an affidavit accompanying the petition for fees, counsel for Cox explained that the retaliatory discharge claims constituted the majority of this case; counsel claimed to have expended 325.3 hours in attorney and paralegal time working on the retaliatory discharge claims and 13.4 hours working on the defamation claim. Counsel properly omitted from the fee petition the hours spent on defamation, because they were duplicative. When considering the request for fees, the court had already observed the trial and, consequently, had the benefit of knowing the respective weight and length of Cox's claims. Thus, when the trial court determined that counsel for Cox was entitled to $31,562.50 in fees, plus interest, the court implicitly found that counsel's estimates and apportionment of hours and fees were correct. Absent a showing of clear error here, we defer to those findings. Minn. R. Civ. P. 52.01. The trial court did not abuse its discretion in awarding attorney fees.

### 10. Interest

 Finally, Crown CoCo contends the trial court erred when it awarded preverdict interest on the damage award and when it calculated interest on attorney fees. Again, we disagree. Minn.Stat. § 549.09, subd. 1(b) (1994), governs the calculation of pre-verdict interest. In interpreting this statute, the supreme court noted that the language, as amended, allows

> pre-verdict interest irrespective of a defendant's ability to ascertain the amount of damages for which he might be held liable or to stop the running of interest. Since such "interest" cannot be calculated until the amount on which interest is allowed has been fixed by verdict, it is apparent that pre-verdict interest is not conventional interest on a sum of money. Rather, it is an element of damages awarded to provide full compensation by converting time-of-demand (either by written settlement offer or commencement of action) damages into time-of-verdict damages.

*Lienhard v. State,* 431 N.W.2d 861, 865 (Minn.1988). "[I]nterest is available not only on ascertainable special damages but also on general damages such as those for pain and suffering." *Skifstrom v. City of Coon Rapids,* 524 N.W.2d 294, 296 (Minn.App.1994), (reading *Lienhard* in conjunction with section 549.09), *review granted* (Minn. Feb. 3,

1995), *and appeal dismissed* (Minn. Oct. 25, 1995). These cases specifically allowed pre-verdict interest in cases involving damages (pain and suffering, personal injury) similar to Cox's here (emotional distress, lost wages). Based upon this authority, the trial court's award of preverdict interest on the damages award is proper.

■ The award of postjudgment interest on the attorney fees award is also proper. The court calculates interest from the date the court issues an order entitling the party to attorney fees. *Jenkins by Agyei v. Missouri,* 931 F.2d 1273, 1277 (8th Cir.1991), *cert. denied,* 502 U.S. 925, 112 S.Ct. 338, 116 L.Ed.2d 278 (1991). The trial court calculated interest here from February 9, 1995, the date it first determined Cox was entitled to attorney fees and the same day it entered judgment for Cox based on the jury's verdict. Contrary to Crown CoCo's contention, the date of entitlement is the appropriate calculation point, not the date of liquidation. *Id.*

## DECISION

The trial court properly denied JNOV and a new trial and properly instructed the jury on the standard of proof for a retaliatory discharge claim. Crown CoCo was not entitled to a qualified privilege on the defamation claim, because Lindstrom did not have reasonable or probable cause to believe her statements about Cox were true. The record supports the jury's verdict and damage calculations. The trial court did not abuse its discretion in awarding attorney fees with interest or preverdict interest to Cox's damage award.

**Affirmed.**