Gerri **KUECHLE**, Respondent,

v.

**LIFE'S COMPANION P.C.A., INC., et al.,** Appellants.

No. C9–02–233.

Court of Appeals of Minnesota.

Nov. 19, 2002.

Clair Schaff, Connor, Satre & Schaff, L.L.P., Minneapolis, MN, for respondent.

Kurt B. Glaser, Kurt B. Glaser and Associates, Minneapolis, MN, for appellants.

Considered and decided by SHUMAKER, Presiding Judge, SCHUMACHER, Judge, and KLAPHAKE, Judge.

## OPINION

KLAPHAKE, Judge.

Respondent Gerri Keuchle brought claims related to her wrongful employment termination against appellants Donna Wilson and Marilyn Lom, owners of appellant Life's Companion P.C.A., Inc., based on the termination of her employment one month after she filed a disability discrimination claim. The district court found for respondent, after a bench trial, on claims of defamation, disability discrimination under the American with Disabilities Act (ADA), and reprisal under the Minnesota Human Rights Act (MHRA).

Because we conclude the district court did not abuse its discretion and the record and law support its conclusions, we affirm the district court on the defamation and reprisal issues. Further, because the district court properly and logically interpreted *Sutton v. United Air Lines*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), we conclude that respondent is a qualified individual under the ADA and affirm the district court on that issue.

## FACTS

Appellants employed respondent as a nurse in a home health care business. In 1983, respondent was diagnosed with panic disorder with agoraphobia, causing her to fear leaving her home and to avoid traveling. Respondent was in remission until 1996, when symptoms resurfaced.

Respondent sought treatment from a number of psychologists and psychiatrists, but declined to take the medication they recommended out of fear of addiction. Instead, respondent took Fridays off during the winter months, forcing herself to go to public places during the day when fewer people were around, in an effort to become acclimated to leaving her home. Appellants initially granted respondent's request for time off, but later took away the accommodation. Although appellants were aware of respondent's disability when she requested Fridays off, they did not inquire into her medical condition or possible accommodations. Appellants also informed respondent that she had to work full time.

In February 1998, respondent asked to return to her flexible schedule, but appellants demanded that she work full time or be on-call. Respondent requested the accommodation a second time, including a letter of support from her doctor, and a third time, but received no response from appellants. She made two more written requests, to which appellants' attorney replied with a letter advising her to seek a professional assessment of her condition and informing her that her new work hours would be 8:30 a.m. to 12:30 p.m.

Respondent filed a disability discrimination claim on April 15, 1998, which reached appellants on April 21, 1998. At 12:15 p.m. on May 12, 1998, the main office received a phone call from a father who could not reach the care provider assigned to meet his disabled son at his noon school bus. A co-worker was sent to the bus to meet the child. Before respondent's supervisor left at approximately 12:15 p.m., she asked respondent, who was alone in the office, if she would be around for a few minutes, and if so, could she ask the missing care provider to call the father. Respondent left at 12:35 p.m., missing the call from the care provider that came in at 12:39 p.m. That afternoon, appellants met with respondent's supervisor and a co-worker to

discuss what happened. Without talking with respondent, appellants decided to terminate her employment. Appellants sent a termination letter to respondent stating that she disobeyed a direct order to stay until the care provider called and that she abandoned a vulnerable client. Appellants told respondent they had no choice but to report the incident to the Minnesota Board of Nursing (board), although they never did.

Respondent communicated the reason for her termination to a potential employer during a job interview, repeating the statements in the termination letter. Although not asked the reason for her termination, respondent felt compelled to disclose it because she thought that appellants had reported her to the board. Respondent sued appellant for defamation, disability discrimination, and reprisal. The district court found for respondent and awarded $22,722.16 in damages and $100,229.06 in attorney fees.

## ISSUES

1. Did the district court err in applying the law regarding opinion and substantial truth?

2. Did the district court err in applying the law regarding compelled selfpublication?

3. Did the district court err in applying the law regarding an employer's qualified privilege to make potentially defamatory statements?

4. Is respondent a qualified individual under the ADA?

5. Did the district court err in finding reprisal under the MHRA?

## ANALYSIS

### I.

Appellants argue that their statements that respondent disobeyed a direct order and abandoned a vulnerable client are true, offering a complete defense to defamation or, in the alternative, that the statements were substantially true or were opinion. Appellants contend that respondent's supervisor asked respondent to stay until she received the phone call and that whether it was a direct order or a request does not make appellants' accusation false. We disagree.

■ Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the district court to judge the credibility of the witness. Minn. R. Civ. P. 52.01. Generally, the truth or falsity of a statement is inherently within the province of a jury. *Lewis v. Equitable Life Assur. Soc'y*, 389 N.W.2d 876, 889 (Minn.1986).

■ The elements of defamation require the plaintiff to prove (1) that the statement was false; (2) that it was communicated to someone besides the plaintiff; and (3) that it tended to harm the plaintiff's reputation and lower him in the estimation of the community. *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 410 (Minn.1994). Imputations concerning one's business, trade, or profession are actionable per se, without proof of actual damages. *Anderson v. Kammeier*, 262 N.W.2d 366, 372 (Minn.1977). A plaintiff must satisfy the remaining elements to succeed in a defamation action. *Foley v. WCCO Television, Inc.*, 449 N.W.2d 497, 500 (Minn.App.1989), *review denied* (Minn. Feb. 9, 1990).

Here, appellants sent respondent a termination letter stating:

> Today you were given a direct order by Tricia Rhode to stay at work to assure the needs of a 5 and a half year old child. You left work and locked the

office without assuring that the client's needs were attended to. You have abandoned a client and neglected your duties. We have no choice but to take action and report this incident to the Nurse's Board.

■ [T]rue statements, however disparaging, are not actionable. *Stuempges v. Parke, Davis Co.,* 297 N.W.2d 252, 255 (Minn.1980). The truth must go not only to the accuracy of the statement, but its underlying implications as well. *Lewis,* 389 N.W.2d at 889. Minor inaccuracies and details are not significant if the statement is true in substance. *Jadwin v. Minneapolis Star Tribune Co.,* 390 N.W.2d 437, 441 (Minn.App.1986). A statement will be considered substantially accurate if its gist or sting is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced. *Id.* (citation omitted).

■ The record shows that although appellants claim respondent defied a direct order, respondents co-workers and supervisor testified that she was not given a direct order. Rather, she was asked if she would be around for a few minutes and, if so, could she tell the PCA to go to the clients house. The difference between an order and an inquiry of whether respondent would be around for a few minutes is greater than a minor inaccuracy and changes the underlying implications of whether respondent was disobedient and the urgency of the situation. The record indicates that the situation was not urgent, but was under control, and the child was met at the bus stop by a co-worker. We conclude that, based on the record, the district courts findings were not clearly erroneous.

## II.

Appellants argue that the district court incorrectly found that respondent was compelled to self-publish the defamatory statements. We disagree.

■ Generally, where a defendant communicates a statement to a plaintiff, who then communicates it to a third party, there is no publication. *Lewis,* 389 N.W.2d at 886. The publication element can be met, however, if the plaintiff is compelled to publish the defamatory statement to a third person and if it was foreseeable to the defendant that the plaintiff would be so compelled. *Id.* at 888. In recognizing the doctrine of compelled self-publication, the supreme court stated:

We acknowledge that recognition of this doctrine provides a significant new basis for maintaining a cause of action for defamation and, as such, it should be cautiously applied. However, when properly applied, it need not substantially broaden the scope of liability for defamation. The concept of compelled self-publication does no more than hold the originator of the defamatory statement liable for damages caused by the statement where the originator knows, or should know, of circumstances whereby the defamed person has no reasonable means of avoiding publication of the statement or avoiding the resulting damages; in other words, in cases where the defamed person was compelled to publish the statement.

*Id.*

■ Here, the district court reasoned that because respondent was told that appellants had reported her action to the board, she had no reasonable means to avoid voluntarily self-publishing the statement, even though her potential employers did not directly ask her the reason for her termination. We agree. Because respondent believed that potential employers knew or would find out about the state-

ment, she was compelled to self-publish so that she could defend her professional reputation. The district court did not err in finding that respondent had been compelled to self-publish the defamatory statements.

## III.

Appellants argue that they have a qualified privilege to make the defamatory statements and are therefore immune from liability. We disagree.

The initial determination of whether a statement is privileged is a question of law for the district court to determine and is subject to de novo review. *Lewis,* 389 N.W.2d at 890. Even if an untrue defamatory statement is published, there will be no liability if the statement is conditionally privileged and the privilege is not abused. *Id.* at 889. For a communication to be privileged, it must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. *Stuempges,* 297 N.W.2d at 256–57 (citation omitted); *see Wirig v. Kinney Shoe Corp.,* 461 N.W.2d 374, 380 (Minn.1990).

As appellants note, investigatory statements are generally privileged:

> Communications between an employers agents made in the course of investigating or punishing employee misconduct are made upon a proper occasion and for a proper purpose, as the employer has an important interest in protecting itself and the public against dishonest or otherwise harmful employees.

*McBride v. Sears, Roebuck Co.,* 306 Minn. 93, 97, 235 N.W.2d 371, 374 (1975); *see Lewis,* 389 N.W.2d at 890 (recognizing qualified privilege applies to statements regarding employees discharge, because of public interest that reasons be available to both discharged employee and prospective

employers; without privilege, employers may not inform employees of reasons for discharge). But the statements must be made in good faith. *Ferrell v. Cross,* 557 N.W.2d 560, 566 (Minn.1997). The employer cannot simply rely on accusations made by other employees or on secondhand hearsay with no identified source. *Wirig,* 461 N.W.2d at 380–81.

Here, appellants argue that the statements were made during the investigation or in response to employee interviews. But the record shows that appellants did not conduct a thorough investigation, failed to interview respondent, and ignored the supervisor's statement that she made a request, rather than gave a direct order. *Cox v. Crown CoCo, Inc.,* 544 N.W.2d 490, 498 (Minn. App.1996) (concluding there were no reasonable or probable grounds for the defamatory statements because the employer did not investigate her suspicions or confront the employee with her accusations before she made the defamatory statements). Because of the cursory nature of appellants' actions, we conclude the district court properly found they are not entitled to a privilege. Where there is no privilege, there is no need for respondent to prove malice, contrary to appellants' assertions. *See Stuempges,* 297 N.W.2d at 257.

## IV.

Appellants argue that respondent is not a qualified individual under the ADA and the MHRA because, if medicated, respondent would not suffer from the symptoms of agoraphobia. We disagree. Because this is a question of statutory construction, we conduct a de novo review. *Lee v. Hunt,* 642 N.W.2d 57, 59 (Minn. App.2002).

In 1990, Congress enacted the ADA to combat the discrimination persons with

disabilities face due to myths, fears, and stereotypes. "[I]ndividuals with disabilities are a discrete and insular minority * * * subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society." 42 U.S.C. § 12101(a)(7) (1994). Under the ADA, "disability" means:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2) (1994).

The United States Supreme Court has found that persons are not to be evaluated in their hypothetical, uncorrected state when determining if a person has a disability under the ADA. *Sutton v. United Air Lines,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The Court went on to state that the Equal Employment Opportunity Commission's approach would require courts and employers to speculate about a person's condition and would, in many cases, force them to make a disability determination based on general information about how an uncorrected impairment usually affects individuals, rather than on the individual's actual condition.

> The use or nonuse of a corrective device does not determine whether an individual is disabled; that determination depends on whether the limitations an individual with an impairment *actually* faces are in fact substantially limiting.

*Id.* at 488, 119 S.Ct. at 2149 (emphasis in original).

■ *Sutton* emphasizes current, actual limitations. Applying the reasoning of *Sutton,* courts must not speculate on a party's condition absent mitigating devices; conversely, courts must not speculate on the ameliorative effect a mitigating device could have on a party not currently employing it. The court properly focused on respondent's present state, rather than speculating on what that state could be with medication.

Appellants cite *Spades v. City of Walnut Ridge,* 186 F.3d 897 (8th Cir.1999), as support for their proposition. In *Spades,* the Eighth Circuit held that under *Sutton,* a determination of whether depression is a disability must be made with reference to any mitigating measures the employee takes. *Id.* at 900. "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Id.* (citing *Sutton,* 527 U.S. at 482–83, 119 S.Ct. at 2146–47). *Spades* is not controlling law. Moreover, unlike *Spades,* respondent's disability was not corrected by medication; thus, her disability continues to limit major life activities. We conclude, therefore, that *Spades* is distinguishable from the issue at hand, and the district court correctly concluded that respondent was a qualified person under the ADA.

## V.

■ Appellants argue that the district court erred by relying on *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428 (Minn.1983), rather than on *Kipp v. Mo. Highway & Transp. Comm'n,* 280 F.3d 893, 897 (8th Cir.2002), in finding reprisal under the MHRA. We disagree.

■ The MHRA forbids reprisal against an employee who opposes a practice forbidden under the Act. Minn.Stat. § 363.03, subd. 7(1) (1998). To establish reprisal, the employee must show statutorily protected conduct, an adverse-employment action by the employer, and a causal connection between the two. *Dietrich v. Canadian Pac. Ltd.,* 536 N.W.2d 319, 327 (Minn.1995). Protected conduct includes

both opposing a discriminatory practice and filing a claim. Minn.Stat. § 363.03, subd. 7(1).

> It is an unfair discriminatory practice for any * * * employer * * * to intentionally engage in any reprisal against any person because that person [o]pposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter * * *.

*Id.*

Appellants argue that *Hubbard* is no longer good law because the Eighth Circuit stated "mere coincidences of timing" is not sufficient to show retaliatory discharge. *Kipp,* 280 F.3d at 897. *Hubbard* states that

> the causal connection requirement may be demonstrated indirectly by evidence of circumstances that justify an inference of retaliatory motive, such as a showing that the employer has actual or imputed knowledge of the protected activity and the adverse employment action follows closely in time.

*Hubbard,* 330 N.W.2d at 445; *see also Dietrich,* 536 N.W.2d at 327. *Hubbard* is still valid law with regard to state law claims.

Appellants argue that respondent was terminated for failing to follow a direct order and failing to safeguard a vulnerable child and not because she filed a discrimination claim. The record does not support appellants' claims of direct disobedience or endangerment. We conclude that the district court did not err in finding that appellants' given reason for terminating respondent was pretextual.

### DECISION

The district court's findings and conclusions are supported by the record, and properly apply the controlling law of this jurisdiction. We therefore affirm.

**Affirmed.**