# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3745

_____

| | | |
|---|---|---|
| Duane Dewey Anderson, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Independent School District, also | * | |
| known as Moose Lake Community | * | |
| Schools, Number 97; Nancy E. Kaldor, | * | Appeal from the United States |
| in her individual capacity and her | * | District Court for the |
| official capacities as Superintendent | * | District of Minnesota. |
| and Responsible Authority of | * | |
| Independent School District | * | AMENDED OPINION |
| Number 97; | * | |
| | * | |
| Defendants-Appellees, | * | |
| | * | |
| Art Forse, in his individual capacity, | * | |
| | * | |
| Defendant. | * | |

_____

Submitted: November 21, 2003

Filed: February 6, 2004
_____

Before MURPHY, LAY, and BRIGHT, Circuit Judges.

_____

LAY, Circuit Judge.

Duane Anderson brought suit against Independent School District Number 97, its Superintendent Nancy Kaldor, and Transportation Supervisor Art Forse (collectively, the "School District") asserting several claims, including defamation and a violation of the Minnesota Government Data Practices Act ("MGDPA"). Anderson alleged that School District employees made defamatory statements and other unlawful disclosures regarding a drug test that he was required to take in April of 1998. The district court[1] partially granted the School District's judgment as a matter of law at the close of evidence, dismissing Anderson's defamation claim, but allowed the MGDPA claim to be submitted to the jury. Following a jury verdict in Anderson's favor, the district court granted the School District's renewed motion for judgment as a matter of law, holding that there was insufficient evidence to support the jury's verdict. Anderson now appeals, and we affirm.

## BACKGROUND

On April 23, 1998, Anderson, a bus driver for the School District, was randomly selected to undergo a drug test. Under the federal regulations that govern such drug tests, Anderson was required to provide a urine sample of at least forty-five milliliters. See 49 C.F.R. § 40.25(f)(10) (1997). He testified at trial that he provided more than the required amount. However, Kyle Neumann, who was conducting the test, testified that Anderson provided an insufficient sample. The sample was subsequently tested, and found to be negative for all controlled substances. Nonetheless, on May 13, 1998, Superintendent Nancy Kaldor informed Anderson by letter that he was suspended, explaining that the federal regulations prohibit an employee from driving a commercial vehicle if the employee refuses to submit to a required test. See 49 C.F.R. § 382.211 (1997). An inadequate sample is treated under

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

the regulations as a refusal to test. <u>See</u> 49 C.F.R. § 40.25(f)(10)(iv)(A) (1997).[2] . Kaldor directed Anderson to obtain an assessment by a substance abuse professional and to submit another sample for testing. Anderson did not submit another sample.

Anderson filed suit against the School District in federal district court for the District of Minnesota. He claimed that the School District had defamed him by making untruthful statements about him to a third party to the effect that he had failed the drug test or refused to take it. He also claimed that the School District had violated the MGDPA, Minn. Stat. §§ 13.01-13.99, by wrongfully disclosing information in his personnel file to the effect that he had refused to take the drug test.[3]

The case was tried before a jury in November of 2001. At the close of all the evidence, but prior to submission of the case to the jury, the School District moved for judgment as a matter of law on all claims. The district court granted the motion as to many of Anderson's claims, including his defamation claim, but denied it as to Anderson's claim of wrongful disclosure of government data under the MGDPA. The district court held that Anderson had submitted evidence of a MGDPA violation

_____

[2]Anderson argues on petition for panel rehearing that our previous citations to the 2002 regulations were erroneous because they were not in effect at the time Anderson took his drug test in April of 1998. We agree, and have amended our opinion to include citations to the 1997 regulations Anderson sets out in his petition, which cover the period from October of 1997 to October of 1998. We do not find, however, that the correction of these citation errors affects our holding in the case, as the 1997 regulations are identical in substance to the 2002 regulations in all respects relevant to this opinion.

[3]Anderson also asserted violations of the American with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.,* the Minnesota Human Rights Act, Minn. Stat. §§ 363.03(2)(c) and 363.03, subd. 6, and The Omnibus Transportation Employee Testing Act, 49 U.S.C. § 31306 *et seq.*, as protected by 42 U.S.C. § 1983. However, we focus only on the MGDPA and defamation claims that are the subject of Anderson's appeal.

that was "sufficiently clear that it present[ed] a factual issue for the jury to resolve." Jeffery Kirk, the former Transportation Supervisor, testified that Art Forse, the current Transportation Supervisor, had told him that Anderson "refused to take a drug test." Forse denied having made this statement to Kirk. The district court found that the issue should go to the jury because that statement, if made, could be considered a wrongful disclosure of information from Anderson's personnel file under the MGDPA.

The jury returned a verdict for Anderson, finding that the School District violated the MGDPA and that such violation was a direct cause of injury to Anderson. The jury awarded $108,000 in pain and suffering and loss of reputation damages, $67 for hospital expenses, $10,000 for loss of earnings up to the date of the verdict, $2,000 for future medical expenses, and $100 in exemplary damages. The School District then renewed its motion for judgment as a matter of law, which the district court granted, finding that the evidence was insufficient to support the causation and damage elements of Anderson's MGDPA claim. Anderson now appeals.

## STANDARD OF REVIEW

We review a district court's grant of judgment as a matter of law *de novo*, applying the same standard as the district court. See Garcia v. City of Trenton, 348 F.3d 726, 727 (8th Cir. 2003). Judgment as a matter of law is appropriate when a party fails to establish a "legally sufficient evidentiary basis for a reasonable jury to find for that party." Fed. R. Civ. P. 50(a). Judgment as a matter of law is not proper unless "all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party." Moran v. Clarke, 296 F.3d 638, 643 (8th Cir. 2002) (quotations and citations omitted). Under such review, we do not weigh the evidence or make credibility determinations, but draw all factual inferences in favor of the non-moving party. See Garcia, 348 F.3d at 727.

**ANALYSIS**

*Defamation Claim*

Anderson claims that the School District defamed him by making the following untruthful statements about him to a third party: 1) that he refused to provide an adequate urine sample; 2) that he refused to take a drug test; 3) that he tested positive on the drug test; 4) that he was a drug user; and 5) that he failed the drug test. The district court held that Anderson had not provided sufficient evidence to support his defamation claim regarding any of these alleged statements.[4] We agree. Judgment as a matter of law was appropriate because, for each of the above statements, Anderson "failed to meet [his] burden as to an essential element of the cause of action." Harris v. Pirch, 677 F.2d 681, 683 (8th Cir. 1982).

Regarding the first alleged statement, it could not be defamatory because none of the Defendants ever published the statement to a third party. The statement was made in the May 13, 1998, suspension letter from Kaldor, who testified that the letter was sent directly to Anderson and that she did not disclose Anderson's drug test results to anyone else. Also, the evidence at trial showed that Anderson had "self-published" the letter, and that he was therefore responsible for any harm to his reputation. Anderson argues on appeal that based upon Kuechle v. Life's Companion P.C.A., Inc., 653 N.W.2d 214 (Minn. Ct. App. 2002), the School District can be liable for the defamatory statement contained in the suspension letter, even though it was self-published by Anderson. Id. at 219-20. However, in Kuechle, the court held that self-publication can constitute valid publication to a third party only under certain limited circumstances:

---

[4]To establish a *prima facie* case of defamation under Minnesota law, a plaintiff must prove that the alleged defamatory statement: 1) was false, 2) was communicated to someone besides the plaintiff, and 3) tended to harm the plaintiff's reputation and lower him in the estimation of the community. See, e.g., Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980).

> Generally, where a defendant communicates a statement to a plaintiff, who then communicates it to a third party, there is no publication. The publication element can be met, however, if the plaintiff is compelled to publish the defamatory statement to a third person and if it was foreseeable to the defendant that the plaintiff would be so compelled.

Id. at 219 (citation omitted). The evidence shows that Anderson voluntarily showed Kaldor's letter to many people in the community, not because he was compelled to do so, but simply to explain the injustice he felt had been done to him.

Regarding the second alleged statement, while there was testimony that the statement had been made, the statement was true and therefore cannot be defamatory. Kirk testified that Forse had told him that Anderson "refused to take the drug test." As the district court determined, however, "Forse's statement that plaintiff 'refused to take a drug test' [was] an accurate statement based on the federal regulations." See 49 C.F.R. § 40.25(f)(10)(iv)(A) (1997).[5] Anderson asserts on appeal that, contrary to what the district court held, the statement was not accurate because Anderson testified at trial that he provided an adequate sample. Regardless of what Anderson said he did, however, the test administrator determined that he did not provide an adequate sample. Anderson was therefore considered to have refused to take the test under the regulations. Forse's statement that Anderson refused to take the drug test was therefore true in light of the test administrator's determination.

Regarding the third and fourth alleged defamatory statements above, we hold, as did the district court, that there was no evidence in the record that an employee of

---

[5]Despite Anderson's strenuous objections in his petition for panel rehearing, we agree with the district court's reading of this federal regulation, "that a failure to provide an adequate urine sample is treated as a 'refusal to test.'"

the School District told anyone that "plaintiff tested positive on the drug test" or "that plaintiff was a drug user."

Finally, regarding the fifth alleged statement, the only evidence to support that any School District employee made the statement was, in the words of the district court, "extremely weak." The person who claimed to have overheard the statement could not conclusively identify who actually made the statement. We hold that the evidence of an overheard conversation in which the speaker could not even be identified was not a legally sufficient basis for a reasonable jury to find defamation against the School District. See French v. Eagle Nursing Home, Inc., 973 F. Supp. 870, 883-84 (D. Minn. 1997) (holding that, under Minnesota law, "the plaintiff must identify who made the defamatory statement").

*MGDPA Claim*

The only claim submitted to the jury was Anderson's MGDPA claim, asserting that an employee of the School District had unlawfully disclosed confidential information regarding the results of Anderson's drug test in violation of Minn. Stat. § 13.05, subd. 4. That statute provides in relevant part:

> Private or confidential data on an individual shall not be collected, stored, used, or disseminated by political subdivisions, statewide systems, or state agencies for any purposes other than those stated to the individual at the time of collection . . . .

Minn. Stat. § 13.05, subd. 4.[6]  In order to prevail on a claim under the MGDPA, the plaintiff must prove not only a violation of the statute, but that the plaintiff has sustained damage, and the damage was a direct result of the unlawful disclosure.  See Navarre v. S. Washington County Sch., 633 N.W.2d 40, 53-54 (Minn. Ct. App. 2001), rev'd in part on other grounds, 652 N.W.2d 9 (Minn. 2002); M.P. ex rel. K., D.P. v. Indep. Sch. Dist. No. 721, 200 F. Supp. 2d 1036, 1044 (D. Minn. 2002).

The district court acknowledged, both at the close of evidence and after the jury's verdict, that Forse's statement to Kirk that Anderson "refused to take the drug test" constituted sufficient evidence for a reasonable jury to determine that there had been an unlawful disclosure under the MGDPA.  In its September 25, 2002, Memorandum Opinion and Order, however, the district court held that "[a]fter having closely reviewed the record in this case and giving plaintiff the benefit of all reasonable inferences, there is insufficient evidence to support the causation and damage elements of plaintiff's MGDPA claim."  Although Anderson presented testimony of financial losses after Forse's statement, the district court determined that "there is no evidence in the record connecting those losses to Forse's statement."

Anderson has not demonstrated on appeal that there was any evidence of causation between unlawful School District statements and any loss of reputation or

---

[6]Violations of this provision provide an action for damages under Minn. Stat. § 13.08, subd. 1, which provides in relevant part:

> a political subdivision, responsible authority, statewide system, or state agency which violates any provision of this chapter is liable to a person . . . who suffers any damage as a result of the violation, and the person damaged . . . may bring an action . . . to cover any damages sustained, plus costs and reasonable attorney fees.  In the case of a willful violation, the political subdivision, statewide system or state agency shall, in addition, be liable to exemplary damages of not less than $100, nor more than $10,000 for each violation.

other financial damages. Furthermore, our own independent review of the record has uncovered no such evidence. Instead, the record supports the district court's conclusion.

First, regarding loss of reputation, although the jury believed that Forse had told Kirk that Anderson "refused to take the drug test," there was no evidence that Kirk repeated the statement to others. Also, the evidence reveals that, to the extent the information leaked out to the community, Anderson himself was to blame. Indeed, Anderson testified that he told a number of people why he was suspended, and showed them the suspension letter from Kaldor that contained the statement that Anderson refused to submit to testing. One of these people subsequently wrote a letter to the editor in the local newspaper that, while on Anderson's behalf, nevertheless stated that Anderson had been suspended due to his refusal to provide an adequate test. Therefore, since the "buzz around town" was generated by Anderson himself, no additional loss of reputation harm could have resulted from Forse's statement to Kirk. See Achman v. Chisago Lakes Indep. Sch. Dist. No. 2144, 45 F. Supp. 2d 664, 669 (D. Minn. 1999).

Second, regarding Anderson's evidence of actual financial damages of the loss of his farm, cattle, and equipment, the above reasoning applies equally to these damages. Moreover, the evidence showed that the farm had not been profitable for many years and that Anderson was forced to make these sales, not because of any unlawful statements by the School District, but because of a loan coming due that could not be extended.

Third, regarding the $10,000 awarded for lost earnings, the evidence shows that Anderson was paid for the days he was suspended, and that the School District offered to reinstate him, but he did not return to work for the School District.

Finally, regarding the $2,000 awarded for future medical expenses, Anderson presented no evidence of continuing medical treatment and therefore the jury's future medical expenses award fails as a matter of law. See <u>Krutsch v. Walter H. Collin GmBh Verfahrenstechnik Und Maschinenfabric</u>, 495 N.W.2d 208, 213 (Minn. Ct. App. 1993).

On appeal, Anderson argues that the district court's holding is "at direct odds with the evidence adduced at trial, and relied upon by the jury." In his brief, he proceeds to cite, in twenty-two numbered paragraphs, evidence that he believes supports the jury's verdict. This evidence, however, while supporting the general proposition that people in town were talking about Anderson and the drug test, does not show causation between any unlawful statements by the School District and any actual or loss of reputation damages to Anderson. Furthermore, Anderson does not rebut the district court's conclusion that Kirk never repeated Forse's statement to any one else, or contest the district court's conclusion that Anderson himself is primarily responsible for generating the "buzz" regarding his drug test. Therefore, since Anderson can show us no evidence to support the jury's verdict, and we can find none, we affirm the decision of the district court.[7]

## CONCLUSION

For the reasons set forth above, the judgment of the district court is AFFIRMED.

_____

[7]Also, because we are affirming the district court's vacation of the MGDPA judgment, Anderson is not entitled to attorney fees under Minn. Stat. § 13.08, which he has requested on appeal.